BILL CANNON v. THE STATE.

No. 1668. Decided November 16, 1897.

**Fraudulent Conversion by a Bailee for Hire—Venue of Offense.**

See opinion for facts stated, upon which it is Held, that a conviction for conversion by a bailee for hire is not sustained as to the county in which the conversion is alleged to have been committed.

APPEAL from the District Court of Blanco. ˉTried below before Hon. W. M. ALLISON.

Appeal from a conviction for fraudulent conversion by a bailee for hire, the penalty assessed being two years imprisonment in the penitentiary.

The opinion states the case.

[No briefs for either party have come to the hands of the Reporter.]

DAVIDSON, JUDGE.—Appellant was convicted of fraudulently converting a buggy and double set of harness to his own use, after having hired the same from one J. J. West, and his punishment assessed at two years confinement in the penitentiary; hence this appeal.

The conversion is alleged to have occurred in Blanco County, where this prosecution was had. The undisputed facts show that appellant hired the buggy from the alleged owner for the purpose of making a trip to the city of San Antonio, about sixty miles distant, and return; that he was to be gone several days; that on his return trip he passed through New Braunfels, San Marcos, and Kyle, and thence back to Blanco City. This return trip involved a distance of about 115 miles. The alleged owner lived at Blanco City, and owned a livery stable at that place. It is further an undisputed fact, admitted by the legal owner, that appellant had been hiring buggies and teams from him since August, 1895, including this hiring, which occurred on the 22d or 23d of January, 1896. And it further appears that appellant was engaged in building tanks and digging ditches, and had an outfit for this purpose; that, in their course of dealing appellant would keep the buggies and teams, as the case might be, as long as he thought proper to do so, beyond the time specified in the contract of hiring. This seems to have been their usual course of dealing with each other, and no trouble had ever arisen heretofore by reason of the detention of the property by appellant beyond the time of contract; and in this case appellant, after his return to Blanco City, kept the buggy and harness, and never returned it. But there is no testimony in the record that West, the alleged owner, took any steps to recover the property, except that he wrote two letters to appellant, inquiring about the matter, to which he received no reply. These letters were apparently written long after the contract of rental, by its express stipulations, had expired, and this may be accounted for by their course of dealing heretofore stated. It is furthermore an uncontradicted fact that appellant re-

turned to Blanco City within seven or eight days of the time when he hired the buggy and harness, and moved his tank-building outfit about ten miles from said city, for the purpose of building a tank on the place of one Anderson; that defendant was then in Blanco City with the buggy and harness, and used it openly there in the city, at one time hitching it for several hours across the street, and in front of West's livery stable; that West himself was not then at home; that the day defendant moved his outfit from Blanco City he went in an opposite direction, about three miles, and effected a settlement with Campbell West, and from this point he returned to Blanco City, remained until 3 or 4 o'clock in the evening, hitching his team, as before stated, just in front of the owner's stable, across the street, and attended to some business in the town, and at the specified time (3 or 4 o'clock) left, and went down to Anderson's, where his outfit had gone. He afterwards dug another tank near the little village of Goforth, within thirty miles or less, perhaps, of Blanco City. Thence he moved into an adjoining county, to Harwood's ranch, and there did some work. This occupied defendant's time until the summer of 1896, the buggy being in the meantime used by him until it was in a dilapidated condition, when he left it at the residence of his father-in-law, Mr. Locke, about twenty-five or twenty-eight miles from Blanco City, where the owner ultimately found it. The defendant testified that he wrote to the owner in reference to the buggy two or three times, but received no reply. The owner testified that he wrote the defendant two letters, and received no reply. It is further shown that defendant sent a message to the owner with reference to it, offering to pay him a fine Jersey bull as a credit on account for the hire of the aforesaid vehicle. This seems to have been in July, 1896. It was proved, adversely to the defendant, that he stated to one Neal that he had traded this buggy to his mother-in-law, Mrs. Locke; she living in Hays County. It is contended, and was contended in the court below, that the testimony is not sufficient to prove an appropriation of the property in Blanco County, and it is further contended that the testimony is not sufficient to show a fraudulent appropriation anywhere. As to the last proposition, it is unnecessary, in our view of the case, to discuss it now.

Recurring to the first proposition (that is, that the testimony does not show an appropriation of the property in Blanco County), we are of the opinion that under the record before us the court should have so held, and granted appellant a new trial. We take it as a correct proposition of law, in cases of this character, that "so long as the person intrusted with money or property acts with reference thereto in accordance with the terms of the trust, whether as servant, clerk, agent, or trustee, he evidently can not be guilty of embezzlement. The question as to what acts shall be sufficient to show the commission of the crime is, in many classes of cases, one of great difficulty. With regard to property (not money) it is necessary that some adverse use or holding be shown, depriving the owner of his property, but there is no prescribed set of circumstances which will be necessary or sufficient to show a fraudulent conversion. The question is

one of fact." 1 McClain Crim. Law, secs. 637, 638; Chaplin v. Lee, 18 Neb., 440, 25 N. W. Rep., 609. And the question may be stated in this form: Does the trustee or bailee exercise dominion over the property intrusted to him, to the exclusion or in defiance of the owner's right? If so, it would be a conversion, whether it is for his own or another's use. The term "conversion" seems to have acquired a technical meaning; that is, detaining goods so as to deprive the owner or person entitled to the possession of them of his dominion over the same.

Now, this offense of theft by conversion of property hired from another seem to be governed very largely by the same principles as embezzlement, for the party comes into possession with the owner's consent, and the contract is in the nature of a bailment. This being true, as long as the bailee holds the property subject to the rights of the bailor, and not adversely, in his own right, then there could be no fraudulent conversion, under our statute, because that proceeds entirely upon the idea that there must— first, be an appropriation of the goods or property, and second, that that appropriation must be fraudulent, and, of course, without the consent of the owner. Until the testimony makes it reasonably certain that these matters have occurred, there can be no violation of our statute with reference to theft of property under a contract of hiring or borrowing. Now, recurring to those facts bearing upon this phase of the case, in regard to the supposed conversion in Blanco County, we find that the bailee hired teams of the bailor, and kept them almost at his will and pleasure, and there has been no trouble with reference to his detention of the property beyond the contract time. Now, there is no evidence in this record of a conversion in Blanco County, unless it be found in the undisputed evidence that appellant, after the term of the contract had expired for which he had hired the buggy, to wit, his return to Blanco City, afterwards used said buggy in Blanco County one day, as shown in the statement of the testimony above. There is nothing to show that it occurred to the owner of the property or to the appellant that there had been any conversion of the property, up to the time he left Blanco City, going to Anderson's to build the tank. This further detention of the property by appellant was in line with their general course of dealing, and it had not occurred to West, the owner, that there was any conversion. Then we say that the testimony is too weak, in our opinion, to justify a conclusion that there had been a fraudulent appropriation, or even any appropriation to his own use and benefit, by appellant, of the buggy and harness set out in the indictment, up to the time that he left Blanco City and Blanco County.

It is unnecessary to deal with the question as to what may or may not be the effect of the testimony with reference to his after acts. The State contended that he traded the buggy to his mother-in-law some months afterwards. This is most emphatically denied by himself, his father-in-law, and brother-in-law, the mother-in-law not being placed upon the witness stand. As this case is presented, it occurs to us, in view of all the facts— the relationhip between the parties, their course of dealing with each other, the intrusting of his property by the owner with the appellant—

that the fact that whenever he saw proper to detain property he had hired from the owner and use it, after the term of hiring it had terminated, he did so without any idea on either side that he was converting the property, would strongly rebut any idea of appropriation of the property in Blanco County, and until long afterwards, if in fact there was any appropriation.

Because we do not believe the testimony justified the conviction in Blanco County, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.