## J. W. TABB v. THE STATE.

### No. 7878. Decided November 7, 1923.

**1.—Theft by Bailee—Contract—Bailment—Agency—Variance.**

Where appellant insisted that there was no contract of bailment, because the owner of the money being insane could not confer upon his brothers power to act as his agent, *held,* that upon finding the money and taking possession of it the brother became obligated to his insane brother to safe-keep his money, and that as an incident to this obligation it was within the scope of his authority to deliver it to the defendant for safe-keeping, and there was no variance between the allegation and proof.

**2.—Same—Charge of .Court—Fraudulent Intent.**

Where the court's charge asserted the proposition that the fraudulent intent might be conceived at any time after such conversion, and the requested charge instructed the jury that he must have formed the specific

intent to defraud at the time he converted the money to his own use, which was refused, same is reversible error. Following Taylor v. State, 50 Texas Crim. Rep., 379.

Appeal from the District Court of Titus. Tried below before the Honorable R. T. Wilkinson.

Appeal from a conviction theft by bailee; penalty, two years imprisonment in the penitentiary.

*J. F. Wilkinson* and *J. A. Ward,* for appellant. Cited, McCarty v. State, 45 Texas Crim. Rep., 512; Evans v. State, 155 S. W. Rep., 531, and cases cited in opinion.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, for the State, Cited, Piper v. State, 56 Texas Crim. Rep., 121.

MORROW, Presiding Judge.—The offense is theft by bailee; punishment fixed at confinement in the penitentiary for a period of two years.

It is charged in the indictment that One Hundred and Thirty-five Dollars in money, the personal property of Charley Young, a lunatic, came into the possession of the appellant by virtue of a contract of safe keeping "with Joseph Young, who was then and there a brother of the said Charley Young, and who was then and there agent for the said Charley Young and the said Joseph Young did then and there, and who was then and there authorized as such agent of the said Charley Young, and who, as such agent, made a contract of said keeping and who then and there delivered said money as aforesaid to the said J. W. Tabb to hold and safe keep for the said Charley Young, the owner of the same."

Charley Young was adjudged a lunatic in the County Court of Titus county. Joseph Young found $135 in money in one of the pockets of some of the clothes of Charley Young and brought it up to the appellant, who, at the time, was County Judge of Titus County. Appellant said that he was the proper person to take charge of the money, and it was delivered to him. The witness said: "The money was delivered to Mr. Tabb, and it was by understanding that as a matter of course, he was taking the money to keep it for my brother, Charley Young." Later, when Joseph Young called for the money, appellant said that it had been spent through mistake; that being intermingled with his own money in the bank, he had inadvertently withdrawn it. He agreed to execute a note as security for the money, and to this Joseph Young indicated his satisfaction.

Appellant testified touching the transaction in substance as did Joseph Young, stating that Joseph Young turned the money over to

him with instructions to keep it for Doctor Powell, superintendent of the asylum. Appellant said that he notified Dr. Powell that he had the money and that only recently had he made demand for the money for Charley Young. He also testified that he kept it in the bank with his own funds and that during the serious illness of his wife, which required an operation, he drew a check in payment of the expenses which exhausted both his own funds and the money in question; that he had agreed to make a note for it and did make the note, though it was never delivered to the said Joseph Young on account of the sickness and death of appellant's wife. Since the arrest of the appellant, it is shown that the money and interest has been paid.

Appellant insists that there was no contract of bailment in that it was apparent that Charley Young, being insane, could not and did not confer upon Joseph Young the authority to act as his agent. It occurs to us that upon finding the money and taking possession of it, Joseph Young became obligated to Charley Young to safe keep his money and that as an incident to this obligation, it was within the scope of his authority to deliver it to the appellant for safe keeping. The facts are set out in the indictment, and if as a matter of law the insanity of Charley Young excluded the idea of agency for him, then Joseph Young's relation to the money rendered him competent to make the contract which he did make, namely, to deliver the money to the appellant for safe keeping for the benefit of his brother, Charley Young. Under these circumstances, appellant's possession of the funds was that of agent through his contract made with Joseph Young, if any. If the pleador misinterpreted the law fixing the status of the parties, he having fully disclosed the facts, his conclusion that Joseph Young became the agent of Charley Young would not bring about a variance in the proof.

The court instructed the jury that if the appellant, having possession of the money under the alleged bailment, fraudulently converted the same to his own use, etc., to convict. The paragraph embracing this was followed by the following:

"However, you are further instructed that if you believe from the evidence beyond a reasonable doubt that the defendant converted the money described in the indictment, but you have a reasonable doubt that at the time he did so, he had the fraudulent intent to deprive the owner of the value of same and to appropriate it to his own use and benefit, then you will acquit the defendant, but the fraudulent intent to deprive the owner of its value and to appropriate it to his own use may be conceived at any time after such conversion, if any."

A specific exception was addressed to the paragraph of the charge quoted. The objection asserts the proposition that in order to con-

stitute an offense, the fraudulent intent must be co-existent with the conversion. Taylor v. State, 50 Texas Crim. Rep., 379; Branch's Ann. Tex. P. C., Sec. 2526.

A special charge was requested embracing the instruction as applied to the facts that to authorize a conviction it must appear that at the time he converted the money to his own use, he did so with the specific intention of depriving the owner of its value and that if he had no intent to permanently deprive the owner of the value at the time of its conversion to his own use, there could be no conviction. This charge apparently submitted the defensive theory arising from the appellant's testimony and was in accordance with our understanding of the requirements of the law. Taylor v. State, supra; Cannon v. State, 38 Texas Crim. Rep., 322; Eilers v. State, 34 Texas Crim. Rep., 344; Stallings v. State, 29 Texas Crim. App. 220.

Because of the fault in the charge mentioned and the refusal of the special charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*