# Krause *versus* Commonwealth.

1. A delivery of chattels upon a sale made on condition that the title shall pass on the payment of the purchase-money at a future day is something more than a bailment; it gives the buyer a conditioned title.

2. In general terms a bailment is the delivering of goods or any other species of personal estate for use, keeping, or on some other trust, where the general property does not pass.

3. To bring a case of larceny by bailee within the 108th section of the Crimes Act of 1860, in addition to the fraudulent disposal of the property, it must be proved that there was such a delivery of the property as to divest the owner of possession, and vest it in the prisoner for some time, and that at the expiration of that time the identical property was to be restored to the owner.

4. The word "bailee" is a legal term, to be understood in its generally accepted sense among jurists, and if it be doubtful whether a case be included, it shall be excluded in the construction of a criminal statute.

5. The owner of horses placed them in possession of defendant, under an agreement for sale to defendant, he to pay the purchase-price of the same, the horses to remain the property of the owner until paid for, and to be returned at a specified time if not paid for. The defendant refused to pay for the horses, and did not pay for them. *Held,* that he was not guilty of larceny as bailee.

6. In favor of the liberty of the citizen the court may, and in a proper case should, declare the evidence insufficient to convict. Pauli *v.* Commonwealth, 8 Norris 432, followed.

March 4th 1880. Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ. MERCUR and GREEN, JJ., absent.

Error to the Court of Quarter Sessions of *Lehigh county :* Of January Term 1880, No. 233.

Indictment of Frederick P. Krause for larceny as bailee.

The facts will be found stated in the opinion of this court.

The first point of defendant, with the answer of the court, Albright, P. J., were as follows :

1. There can be no conviction in this case because the defendant is no bailee of the property in controversy within the meaning of section 108 of the Criminal Code of March 31st 1860, and upon which the count in the bill of indictment upon which he is being tried is found.

Ans. "Refused. Whether defendant was a bailee is one of the questions which must be determined by the jury. If you find that defendant was no bailee, of course there can be no conviction."

The verdict was "guilty," and after judgment thereon the defendant took this writ, and alleged that the court erred in refusing to instruct the jury that under the evidence there could be no conviction of larceny by bailee.

*Butz & Schwartz* and *William H. Sowden,* for plaintiff in error.—Where there is a bailment a re-delivery of the thing bailed is contemplated by the parties. No re-delivery was here intended. The transfer was a conditional sale not a bailment : Hilliard on Sales 1 ; Mallory *v.* Willis, 4 Comst. 85 ; Foster *v.* Pettibone, 7

[Krause v. Commonwealth.]

N. Y. 435; Commonwealth v. Chathams, 14 Wright 188; Haak v. Linderman et al., 14 P. F. Smith 499; Chamberlain v. Smith, 8 Wright 431; Commonwealth v. Cart, 2 Pitts. 495.

*Milton C. Henninger*, District-Attorney, for the Commonwealth. —By an examination of the specifications of error it appears there are none assigning as error the rejection or admission of any evidence by the court below. The question raised is as to the sufficiency of the evidence upon which a conviction was had. We are aware that, by virtue of the Act of 1874, exceptions can now be taken to the admission or rejection of evidence by the court below in criminal cases such as the one at bar. But the fact still remains that this court can not take cognisance of such errors, if any there be, unless the same are properly brought to its notice by bills of exception.

Mr. Justice Trunkey delivered the opinion of the court, March 15th 1880.

The indictment contained two counts: 1. Larceny; 2. Larceny by bailee; the alleged stolen property was the same in both. To the first count Krause pleaded a former acquittal, on which plea verdict and judgment were rendered in his favor. He was then tried and convicted on the second.

In the charge of the court, the Commonwealth's case, as proved, was fairly stated thus: On December 13th 1878, the prosecutor sold and the defendant agreed to purchase the two horses; that the price agreed upon was $150, to be paid on delivery, the prosecutor to take the horses to the defendant's stable, at Allentown, the next day and receive the money; that he took them to said stable and left them; that other interviews and negotiations followed continuing up to the Thursday of the next week, when the horses disappeared from the stable, and were sold or converted by the defendant to his own use. That when the horses were taken to the stable the defendant had only $25, and it was then agreed that the horses should continue to be the property of Deemer, who would not sell them except for cash; that he would wait till the following Tuesday evening, when, if the defendant should not have the money to buy the horses, they were to be taken to Deemer, at Schœnersville, and with this understanding Deemer accepted the $25; that on Tuesday evening the defendant took one of the horses to Schœnersville, and the next evening went again, taking the other horse, on each occasion taking the horse back with him; that on Thursday Deemer went to Allentown for his horses, and offered to return the $25 to the defendant, but he refused to give them; and that the original contract was never changed, the horses were sold only for cash, and the extension of time was given to enable the defendant to buy and pay for them. Such were the alleged facts which now must be taken as true.

[Krause *v.* Commonwealth.]

Having acquitted the defendant of larceny of the horses, the Commonwealth put him to another trial and convicted him of larceny, in stealing the same horses, under section 108 of the Crimes Act of 1860. Villanous as his conduct was, this conviction ought not to stand, unless he was a bailee within the intendment of the act. The word bailee is a legal term, to be understood in its generally accepted sense among jurists, and if it be doubtful whether a case be included it shall be excluded, in the construction of a criminal statute. Blackstone defines bailment as "a delivery of goods in trust upon a contract, express or implied, that the trust shall be faithfully executed on the part of the bailee;" Story, "a delivery of a thing in trust for some special object or purpose, and upon a contract, express or implied, to conform to the object or purpose of the trust;" Jones, "a delivery of goods in trust on a contract, express or implied, that the trust shall be duly executed, and the goods re-delivered as soon as the time or use for which they were bailed shall have elapsed or be performed;" and Kent, "a delivery of goods in trust, upon a contract, expressed or implied, that the trust shall be duly executed, and the goods restored by the bailee, as soon as the purpose of the bailment shall be answered." Mr. Edwards, in his work on Bailment, sect. 2, remarks: These definitions agree in nearly all essential particulars, and disagree in two or three respects. Jones and Kent assume the property is to be returned, while Blackstone and Story include contracts under which no such return is contemplated. Story intends to include among contracts of bailment a delivery of goods for sale; and Kent intentionally limits his definition so as to exclude that species of contract. "In general terms, it may be said that the delivery of goods or any other species of personal estate for use, keeping or on some other trust, where the general property does not pass, creates a bailment. A delivery of chattels upon a sale made on condition that the title shall pass on the payment of the purchase-money at a future day, is something more than a bailment; it gives the buyer a conditional title. If the contract give the buyer a definite credit or a reasonable time within which to pay, it gives him a transferable interest in the chattels until the credit expires, and the property in them as soon as he pays the price."

Authors of received authority generally specify five sorts of bailment, namely, *depositum, mandatum, commodatum, pledge* and *hiring;* and, as severally defined, in each the entire property of the thing bailed remains in the bailor, the possession only is given to the bailee, who is to return or deliver the thing itself as soon as the purpose of the bailment shall be answered. In this state it is settled that the bailee of goods, who uses and enjoys them as if his own, cannot divest the title of the bailor by a sale to an innocent person; nor can a creditor of the bailee seize them in

[Krause *v.* Commonwealth.]

execution of his debt.   When delivered under a contract of bailment, the owner will be entitled to them against everybody.   But a delivery on a conditional sale, the property to remain in the vendor until the goods are paid for, with right to reclaim them, is void as respects the vendee's creditors, or an innocent purchaser from him.   The delivery being on the foot of a purchase, the vendor's right, as against the vendee's creditors, is regarded as a lien for the purchase-money: Chamberlain *v.* Smith, 8 Wright 431; Haak *v.* Linderman, 14 P. F. Smith 499.   By the terms of the contract the seller may retain the right of property in the goods till paid for, as against the purchaser, and, in default of payment, he may reclaim them, or use civil remedies for recovery of possession; but the contract does not make him a bailor, as respects other persons, nor the purchaser a bailee in the sense of the word as used in the statute.

Our statute, as shown by READ, J., in Commonwealth *v.* Chathams, 14 Wright 181, is taken from the English statute; and in that case the interpretation of the words bailee and bailment, as fixed by the English decisions, was adopted, which decisions were cited, showing that the words must be interpreted according to their ordinary legal acceptation, that " bailment relates to something in the hands of the bailee, which is to be returned in specie, and does not apply to the case of money in the hands of a party who is not under any obligation to return it in precisely the identical coins which he originally received;" that " to bring a case within this clause, in addition to the fraudulent disposal of the property, it must be proved; First. That there was such a delivery of the property as to divest the owner of the possession, and vest it in the prisoner for some time; Secondly. That at the expiration or determination of that time the same identical property was to be restored to the owner."

The term bailee is one to be used, not in its large but in its limited sense, as including simply those bailees who are authorized to keep, to transfer, or to deliver, and who receive the goods bona fide, and then fraudulently convert.   Where it does not appear that a fiduciary duty is imposed on the defendant to return the specific goods of which the alleged bailment is composed, a bailment under the statutes is not constituted: Whart. Crim. L., sect. 1855 (8th ed.).

The bargain was struck for a sale of the horses for $150, payable on delivery.   At the time stipulated Deemer delivered the horses, Krause paid $25, they agreed that the property should continue in Deemer, and on the next Tuesday Krause would pay the balance or return the horses.   He refused to do either.   The original contract was not changed—time was extended to Krause to enable him to pay the money.   If there was a delivery at all, it was on the footing of the sale.   There was no agreement to sell at a future

time—a mere contract that the buyer would pay the balance of the price or return the property, in the meantime, the title to be in the seller. Payment would have been a complete performance. Krause was not bound to return the identical property. He had a transferable interest until the credit expired, and he or his transferee would have had clear title the instant of payment. This was something more than a bailment, and Krause was not a bailee in the statutory sense.

In favor of the liberty of the citizen, the court may, and in a proper case, should declare the evidence insufficient to convict: Pauli *v.* Commonwealth, 8 Norris 432. We are of opinion that the defendants first point should have been affirmed.

> Judgment reversed, and the record, with this opinion setting forth the causes of reversal, is remanded to the Court of Quarter Sessions of Lehigh county for further proceeding.