## Commonwealth v. Schaick.

*John G. Love*, District Attorney, for Commonwealth.

*N. B. Spangler* and *Ivan Walker*, for defendant.

FLEMING, P. J., July 15, 1930.—This matter is before us upon a motion in arrest of judgment and for a new trial, the defendant having been convicted of larceny of a four-pronged buck deer.

The testimony discloses that, on December 5, 1929, the defendant, with others, comprised a party engaged in the hunting of deer in the mountains near Aaronsburg, in this county. The prosecutor, with others, was also engaged, on the same day, in a like pursuit. The prosecutor testifies, supported by the testimony of other members of his party, that as he was standing at the side of the road at the foot of the mountain, the deer in question appeared, running or leaping, in a rapid manner, and that when the deer was about ten or twelve feet from him he shot the deer and the deer fell to the ground; that as the deer attempted to rise upon his front feet, he, the prosecutor, walked around the deer and shot it again, killing the deer; that he walked to where the deer was lying and as he was standing over it, preparing to disembowel it, the defendant came up to him, made claim to the deer and in an angry manner, mingled with profane remarks, pulled the deer from beneath the prosecutor and took possession of it.

The defendant's testimony was that, prior to the firing of the first shot by the prosecutor, and further up the mountain, one of defendant's party, who

appeared and testified, had shot the deer in question, one shot taking away one of the deer's hind legs, the second grazing its belly and the third lodging in its shoulder; that an immediate pursuit of the wounded deer was begun, its path being traceable by a trail of blood; that before prosecutor fired the first shot the deer was prostrate upon the ground, the first shot of the prosecutor missing the deer entirely and cutting away some grape vines above it; that while the deer was prostrate upon the ground, the prosecutor fired a second shot into it and then took possession of it.

Defendant in support of his motion assigns the following reasons, to wit:

"(1) Because the evidence on the part of the Commonwealth fails to show the *animus furandi*, or intent to steal.

"(2) Because the evidence on the part of the Commonwealth, as well as on the part of the defendant, shows that the deer had been wounded prior to the two shots fired, as testified to by Paul Stover, and there being no contradictory evidence to the effect that at least two if not three shots had been previously fired by O. J. Auman, and that this deer was wounded by him. These facts being uncontradicted, the fair and proper inference to be drawn from all the evidence in the case is that the defendant and his party of hunters laid claim to this deer under a right of property.

"(3) Because where a person takes possession of property under an honest claim of right, believing at the time that he is the owner of it, even though this fact may not be correct, such person cannot be convicted of larceny.

"(4) Because the deer having been claimed by the defendant and his party under a claim of ownership, the defendant could be guilty, at most, of a trespass only.

"(5) Because more explicit instructions should have been given to the jury to the effect that if the defendant and his party claimed this deer under a right of ownership, and if the jury believed that this was an honest claim, the defendant could not be convicted of the crime charged.

"(6) Because under all the evidence in the cause, the court erred in not directing a verdict for the defendant."

As to the sixth and last reason assigned, we pause here long enough to say that the record plainly discloses that no request for binding instructions was made, either at the close of testimony or when, after completing our charge, we inquired of counsel whether there was anything further which they desired us to say to the jury. We are fully cognizant of our right and plain duty to direct an acquittal where the evidence shows that the offense is not made out (Krause v. Com., 93 Pa. 418; Pauli v. Com., 89 Pa. 432; Com. v. Phila. & Reading Ry. Co., 135 Pa. 256; Com. v. Ruddle, 142 Pa. 144; Com. v. Harris, 168 Pa. 619), but we are as fully cognizant that such instructions should not be given when there is sufficient evidence to go to the jury (Cathcart v. Com., 37 Pa. 108), and our reasons for so holding will be later expressed herein.

Further, we see no merit in the fifth reason assigned. We asked counsel, at the conclusion of our charge, if there was anything further which they desired us to say to the jury and received from defendant's counsel, not such a request as is embodied in the fifth reason, but another and a different request, with which we unhesitatingly complied. We said, however, in the main body of our charge that "if you find, as a matter of fact, that this defendant was under the honest misapprehension that the right of possession to this deer was in Mr. Auman, even though you find that Stover fired the shot that ended the career of the deer, the defendant would be entitled to acquittal at your hands." This is exactly what defendant claims should have

been stated, in his fifth reason. This is likewise the contention of the third reason assigned and the jury were so instructed.

With the fourth reason we cannot agree. It is not the mere making claim of ownership which relieves the defendant of larceny—it is a claim made *bona fide* or honestly, even though in error, which thus operates to excuse him. We instructed the jury that "an honest misapprehension of the ownership of a particular article alleged to have been stolen would defeat the charge of larceny."

Reasons one and two present the vital question to be decided in disposing of these motions, to wit: "Was the question of the existence or non-existence of the elements of the crime of larceny a question for the jury?" We are of the opinion that it was and shall forthwith state our reasons therefor.

The deer which is the subject of this discussion is a part of that class of animals known as *feræ naturæ*, and belonged to no one until it was reduced to possession, either by its capture alive or by its killing. Doubt no longer exists as' to such: Act of May 14, 1929, P. L. 1720, amending section 1117 of the Game Code of May 24, 1923, P. L. 359. To acquire such property right in the carcass of a deer, it must have been "lawfully . . . killed." That all of the parties—both those in the party of the prosecutor and those in the party of the defendant—were lawfully engaged in deer hunting is not denied. But who killed the deer? The prosecutor contends it was the two shots which he alleges he fired which extinguished life. The defendant contends that, notwithstanding the admitted fact that the deer was moving rapidly at a distance of 500 yards away from his party, it was the shot of O. J. Auman·which inflicted the mortal wound. Surely such is a question of fact and an important one to be considered with other facts in leading to the determination of the existence or nonexistence of *animus furandi* on the part of the defendant. We told the jury: "If you find that Mr. Auman fired the fatal shot, then, beyond question, the ownership of the deer was in Mr. Auman, and if Mr. Schaick, the defendant, took it into his possession on behalf of the real owner, that would not constitute the crime of larceny. On the other hand, if you find it was the shot fired by Mr. .Stover that ended the career of this animal, and that Mr. Schaick took it without claim of right, without an honest misapprehension of his ownership, and you are satisfied of that beyond a reasonable doubt, of which we will speak later, then he would be guilty of larceny, and we say to you that an honest misapprehension as to the ownership of a particular article alleged to have been stolen would defeat the charge of larceny."

Further, at the specific request of counsel for the defendant, we said: "Members of the jury, what we intended to say, and what we say to you now, is that if you find, as a fact, that there were two shots fired at this deer, taking effect in the body of the deer, either of which would have mortally wounded the deer, then your further duty would be to determine who fired the first of those mortal shots. It is the contention of the defendant in this case that the shot fired by Mr. Auman which penetrated the back of the deer and broke several of his ribs was the mortal wound which ended the career of this deer. If that be true, as we have said to you before, the right to the possession of the deer would be in the person who fired the fatal shot."

The jury heard all the testimony as to the manner in which the several shots were fired; they had an opportunity to observe the several witnesses while testifying and to duly weigh their evidence; in addition, they were accorded the privilege of inspecting the hide of the deer in question and thus observing the location of the several bullet penetrations therein. There was a plain issue of fact as to who had killed the deer, and the jury found that it was the

prosecutor and not the defendant who had done so, and, as that finding is not contrary to the evidence, we have no jurisdiction to set aside such a finding.

This finding as to who was responsible for mortally wounding the deer, weighed in the light of the surrounding circumstances, as disclosed by the evidence, clearly supports the finding by the jury of a felonious intent necessary to support the charge of larceny. The manner in which the deer was shot, assuming defendant's testimony to be true, furnished an opportunity for the jury to judge the *bona fide* nature of the alleged claim of ownership. This fact, with the manner and demeanor of the defendant upon approaching the prosecutor, then in possession of the deer, the defendant's testimony that he had not claimed ownership in the deer but that he (meaning the prosecutor) would "never take that deer unless you are a better man than I am," the profane language used to the prosecutor, the exhibition of his hunting knife, the forceful pulling away of the deer from beneath the prosecutor, together with other evidences of a desire to settle the dispute in a belligerent rather than a peaceful manner, gave ample grounds to the jury to find the felonious intent necessary to support a conviction.

In Com. *v.* Eichelberger, 119 Pa. 254, 277, where the defendant was charged with larceny and it was contended that the felonious intent necessary to support the conclusion did not appear, Justice Paxson said:

"In this case it is claimed that there was no larceny because there was no felonious intent. It was the especial province of the jury to dispose of this question, and they have settled it against the defendant. It was fairly submitted to them as a question of fact, with the instruction substantially, that they must be satisfied from the evidence, beyond a reasonable doubt, that the defendant took the check feloniously, with intent to convert it to his own use, or that he obtained it by a trick or artifice, with a like felonious intent at the time he obtained it. Shall we say the jury were wrong, and reverse their finding? If there were no evidence of any felonious intent, or if the evidence greatly preponderated against such intent, we should feel bound to set aside this verdict. While we seek to administer the law impartially, we will not be astute in opening avenues of escape for criminals. We cannot say that there was not sufficient evidence of the felonious intent to sustain this verdict. . . . The jury having found the animus furandi, and, in the opinion of the court, upon sufficient evidence, our judgment is, that the offence committed by the defendant in this case was larceny."

Issues of fact covering the question as to who had mortally wounded the deer in question, and as to whether the claim of ownership asserted by the defendant was an honest misapprehension or not, clearly convince us that the question of the existence or nonexistence of a felonious intent in the instant case was "the especial province of the jury." After a careful reading and re-reading of our charge to the jury, we are of the opinion that, if such leans in any way, it is in defendant's favor. The jury has decided against the defendant, and we are of the opinion that there is sufficient evidence to support such a finding. The laws relating to property rights extend to the unpopulated forests as well as to the cities. When disputes—honest disputes—arise therein, peaceable and orderly methods must prevail. No hunter, under any circumstances, is permitted to become a law unto himself. The question of the *animus furandi* was fairly submitted to the jury as a question of fact, with the instruction that they must be convinced from the evidence, beyond a reasonable doubt, that the defendant took the deer in ques-

tion without an honest misapprehension of his right thereto. We are without right to say that the jury was wrong. There was evidence, as we have shown, to support such finding. The evidence did not preponderate against such finding. The jury having found the *animus furandi*, and, in our opinion, upon sufficient evidence, our judgment is that the offense committed by the defendant in this case was larceny.

And now, July 15, 1930, motion in arrest of judgment and for new trial is dismissed and defendant is directed to appear in this court on Monday, August 4, 1930, at 10 A. M., for sentence.

From S. D. Gettig, Bellefonte, Pa.