Charles Coney v. The State.

No. 8734.    Delivered April 22, 1925.

Rehearing denied May 20, 1925.

**1.—Embezzlement—Ownership—No Variance.**

Where the indictment charged the ownership of the money alleged to have been embezzled in one Aaronson, and the proof showed that the Tuloma Oil Co., was the owner of the money, but that Aaronson was the agent of this company, and appellant received his authority to receive the money from the sale of some oil casing, belonging to the Tuloma Oil Co., there was no variance in the evidence and allegations of ownership.

**2.—Same—Continued.**

The rule in theft cases touching ownership apply to cases of embezzlement. In charging ownership in theft, it is enough to name the person in possession, that is the person who has the care, control and management of the property. One who without the consent of the possessor, takes the property, the other elements of theft concurring, will *prima facie* be guilty of that offense, but he may successfully defend by showing that his taking was by consent of either the real or the special owner. Following Bailey v. State, 18 Tex. C. A. 426 and other cases cited. Also see Branch's Ann. Tex. P. C. Sec. 2596.

Appeal from the District Court of Wichita County.   Tried below before the Hon. P. A. Martin, Judge.

Appeal from a conviction for embezzlement; penalty, two years in the penitentiary.

The opinion states the case.

*Mathis & Caldwell,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Embezzlement is the offense; punishment fixed at confinement in the penitentiary for a period of two years.

It was charged in the indictment that the appellant was the agent of A. E. Aaronson and that he embezzled a sum of money, the corporeal personal property of the said Aaronson. The second paragraph of the charge was in line with the averment, and in paragraph 3 the jury were instructed that if A. E. Aaronson had the exclusive, care, custody and control of the property from the sale of which the money was received, and he had the right to sell and dispose of the same, he would then be owner of the property and money under the law relating to the offense of embezzlement.

In special charges given at the request of the appellant the jury were told that there could be no conviction of the appellant unless they believe from the evidence beyond a reasonable doubt that he was the agent of A. E. Aaronson, a private person, and that it was by the terms of his employment as agent that he was charged with the duty of receiving the money in question. In another special charge the right to convict was denied unless it was shown beyond a reasonable doubt that the appellant received money equal to fifty dollars belonging to Aaronson in the course of his employment. There were a number of special charges given which it is not necessary to mention.

Appellant requested the court to instruct the jury to acquit the appellant if the Tuloma Oil Company was the owner of the money, and asked for an instructed verdict upon the theory that under the facts proved the appellant was not shown to be the agent of Aaronson.

Appellant made a contract with the witness Jenson under which Jensen was to "pull" the casing from a certain oil well and receive one-half of the casing. Appellant sold to Jenson the other half of the casing and received therefor Jenson's check for $332.70, payable to the appellant, which, according to the evidence, he collated and appropriated to his own use. The oil well was situated upon a leased tract of land in Wichita County, the record title to

which was in A. E. Aaronson who resided in Tulsa, Oklahoma. Aaronson was the president of the Tuloma Oil Company, his wife was vice-president and his father was secretary-treasurer. All of them resided in Oklahoma. There were two other persons owning stock in the oil company mentioned, so that they might be directors. The oil company was an Oklahoma corporation, and had no permit to do business in Texas. Substantially all of the stock belonged to the Aaronson family mentioned,—the husband and wife and father. According to Aaronson, the Tuloma Oil Company did not own the lease upon which the wells were situated but it was through that company that he operated in developing the property. According to his testimony, none of the money received from the sale of the pipe belonged to the oil company; that the property rights in the lease and the proceeds from the sale of the pipe, while standing in the name of Aaronson, were in fact held in trust for himself and the other four persons who were the exclusive owners of the Tuloma Oil Company. In other words, if we comprehend his testimony, it is to the effect that the property in question was owned by the identical individuals who owned stock in the Tuloma Oil Company, but that the Tuloma Oil Company, as a corporation, owned no interest in the property. The correspondence with the appellant was conducted by A. E. Aaronson in the name of the Tuloma Oil Company, and the appellant was directed by Aaronson in person to dispose of the pipe in question and to take in payment therefor either a certified check or cashier's check, made payable to the Tuloma Oil Company and forward it to Aaronson at Tulsa.

The position taken by the appellant that another company, the Midco Petroleum Company, was shown to have an interest in the property seems not to be borne out in the record, as the testimony is undisputed that what interest it had was transferred to Aaronson, as he expressed it, years ago when he took active management of the property. Aaronson and his associates determined to cease operating the wells because of the exhaustion of the oil supply. Upon reaching this conclusion, Aaronson requested the appellant to come to Tulsa. He came and reported to Aaronson that the pipe had been drawn. They agreed that appellant should remain on the lease in the house belonging to the owner and to look after the pipe without further compensation except the use of the property. He was also instructed to sell the pipe. Aaronson said:

"I told him he could sell it to Jenson and to report to me if the sale was made and to forward the funds made payable to us, if he did sell it."

Appellant insists that there is a variance between the averment and the proof in that A. E. Aaronson, who was named as the owner in the indictment, was not the exclusive owner. Prior to the transaction in question appellant had been employed by Aaronson

as pumper and was paid compensation for looking after the pumps and oil wells on the lease in question. His compensation was paid by checks drawn upon the Tuloma Oil Company account but charged by that corporation to the account of the individuals for whose benefit the title to the property was held.

We are not in accord with the appellant's contention that there was a variance in the proof growing out of the fact that Aaronson was not the exclusive owner of the property, that is, that the entire beneficial interest in it did not belong to him. The instruction given the jury, as we understand it, gave the proper idea of ownership, that is, that if Aaronson had the power of disposition and the care, control and management of it, he was the owner within the meaning of the law. Illustrative of this view is the opinion of this court in Leach v. State, 46 Texas Crim. Rep. 507, written by Presiding Judge Davidson. The indictment charged that the appellant was the agent of Mrs. Loraine Dean, a private person, and that the appellant, as such agent, did then and there unlawfully and fraudulently embezzle and misapply, etc. From the opinion we take the following:

"It is contended there is a variance between the allegations and the proof on the charge of embezzlement, in that the property or money embezzled was the property of the two chidren of Mrs. Dean, of whom she was guardian under the order of the court. Embezzlement partakes largely of the qualities and nature of theft, in that it is a peculiar way of converting money obtained by virtue of a trust relation—the fraudulent idea pervades embezzlement as it does theft. The difference mainly in the two offenses consists in the manner of obtaining possession of the property and the time the fraudulent intent was conceived. So far as the violation of these two statutes, from a criminal standpoint, the ownership is practically the same. Leonard v. State, 7 Texas Crim. Rep. 417."

The rules in theft cases touching ownership apply to cases of embezzlement. See Branch's Ann. Texas P. C., Sec. 2596. Embezzlement is a species of theft, differing from that offense in the manner in which the possession of the property is acquired. In embezzlement, the possession is in the alleged offender with the consent of the owner. The offense consists in its fraudulent conversion against the consent of the owner. The ownership, as in theft, however, may be in a special owner. See Manovitch v. State, 50 Texas Crim. Rep. 263; Butler v. State, 49 Texas Crim. Rep. 160. In embezzlement, as in theft, where the special owner is named in the indictment, it is unnecessary to name the real owner. This is illustrated by the case of Osborne v. State, 245 S. W. Rep. 928, which is cited by the appellant.

In charging ownership in theft, it is enough to name the person in possession, that is, the person who has care, control and management of the property. One who, without the consent of the possessor,

takes the property, the other elements of theft concurring, will prima facie be guilty of that offense, but he may successfully defend by showing that his taking was by consent of either the real or the special owner. See Bailey v. State, 18 Texas Crim. App. 426; Frazier v. State, 18 Texas Crim. App. 434; Osborne v. State, supra.

In embezzlement, the possession is in the agent. His principal, that is, the one to whom he looks for authority, under whose control he acts, from whom he receives compensation and takes direction, is the owner within the meaning of the statute on embezzlement. At least such is our understanding on the subject. See Ruling Case Law, Vol. 9, p. 1281, sec. 22; also p. 1269, sec. 7.

The point made by appellant that the embezzlement was of a half interest in the pipe and not of money, we think is not tenable under the evidence in the case. It was contemplated that the appellant should sell the pipe and remit the money. The offense consisted in his appropriating the money to his own use.

The position is taken by the appellant that the verdict is unsupported for want of proof that the fraudulent intent was coexistent with the conversion of the property. There was no defensive testimony explanatory of the failure of the appellant to deliver the money to his principal. The sale of the property after having the check made payable to himself, collecting the funds, and the failure to account for them, are circumstances which, unexplained, are deemed ample to warrant the finding by the jury of a fraudulent intent to convert the property at the time he received it. The case of Tabb v. State, 255 S. W. Rep. 442, we do not regard in point. The failure to account for the funds there in question was explained in a manner which is entirely wanting in the present case.

The judgment is affirmed.

<em>Affirmed.</em>

ON MOTION FOR REHEARING.

HAWKINS, Judge.—Appellant challenges the statement in our original opinion that the record did not appear to bear out the contention that the Midco Petroleum Company had some interest in the property. Our conclusion was based on the statement of Aaronson made on direct examination. An inspection of his testimony on cross-examination, to which we are referred in appellant's motion, shows we were in error in this particular. However, we are of opinion the legal conclusion announced by us is not affected by this fact. There is nothing in the record showing that the Midco Petroleum Company had any part in the management or control of the property, or in the employment or directions of appellant. He looked solely to Aaronson for authority and was controlled by the latter's instructions; he received compensation from Aaronson

to whom he reported. The fact that Aaronson may have ultimately been responsible to the Midco Petroleum Company for their share in the proceeds of the pipe, if it had ever come into his hands, does not, in our judgment, under the facts of this case, affect the question of appellant being the agent of Aaronson.

The motion is overruled.

*Overruled.*