## Commonwealth *v.* Williams, Appellant.

*Criminal law—Larceny by bailee—Penal code of March 31, 1860, P. L. 408, Sec. 108—Automobile—Bailment—Conditional sale—Possession—Right to sell.*

In the trial of an indictment for larceny of an automobile by bailee, under Section 108 of the Penal Code of March 31, 1860, P. L. 408, it appeared that the automobile in question was one of a number of cars shipped under an order bill of lading with draft attached. The defendant obtained possession of the bill of lading by executing a trust receipt and promissory note in favor of a finance company, which had paid the consignor the amount of the draft. It was understood that the cars were to be security for the debt due the finance company, and that upon the sale of each car, defendant should send to the finance company a remittance in a stipulated sum to be applied against the promissory note. Physical possession of the cars was never in the finance company, and the note was payable at maturity, irrespective of the number of cars sold. Defendant sold the automobile in question and applied the proceeds to his own use.

In such case, the transaction between the finance company and the defendant constituted a conditional sale and not a bailment within the contemplation of the Penal Code, and defendant's motion for a directed verdict should have been granted.

In a complicated transaction, involving the possession of and title to personal property under arrangements for credit and the loan of money, courts will look into the real nature of the transaction, disregarding pretenses and the screen of paper titles.

Argued October 4, 1927. Appeal No. 245, October T., 1927, by defendant from judgment of Q. S., Northampton County, February T., 1927, No. 106, in the case of Commonwealth of Pennsylvania v. Dan M. Williams.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.  Reversed.

Indictment for larceny by bailee.  Before STEWART, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed.  Defendant appealed.

*Errors assigned,* among others, were to the charge of the court and answers to points.

*Calvin F. Smith,* and with him *Dudley A. Giberson,* for appellant.

*Frank P. McCluskey,* and with him *Robert E. James, Jr.,* District Attorney, and *Henry M. Hogan,* for appellee.

OPINION BY CUNNINGHAM, J., March 2, 1928:

Dan M. Williams, defendant below and appellant herein, was, during the year 1926, a dealer in automobiles in the City of Easton, trading under the name of Williams Motor Company.  Among other cars on the floor of his show room on June 10, 1926, was a certain Chevrolet sedan.  On that date Williams sold this car to Henry B. Shultz, receiving in exchange therefor an old car belonging to Shultz, valued at $50, and $882 in money.  The money received by Williams for the car was applied by him to his own use.  Some months later Williams became financially embarrassed and was declared a bankrupt.  In March, 1927, a representative of the General Motors Acceptance Corporation, alleging that the car in question was the property of this corporation and that Williams was a bailee thereof and had fraudulently converted it to his own use, procured his indictment under section 108

of the Penal Code of March 31, 1860, P. L. 408, for the crime of larceny by bailee. The portions of the section applicable to this case read: "If any person, being a bailee of any property, shall fraudulently take or convert the same to his own use, or to the use of any other person, except the owner thereof, ...... he shall be guilty of larceny, and punished as is provided in the cases of larceny of like property." The amendment of May 5, 1927, P. L. 776, to this section does not affect this case in any way.

At the conclusion of the Commonwealth's evidence defendant's counsel requested the trial judge to "direct a verdict of 'not guilty' ........ for want of sufficient evidence to support the charge in the indictment." This motion was denied and the case submitted to the jury, which found defendant guilty. He now appeals from the sentence, assigning as error certain portions of the charge, and the refusal of his two points for charge, which, in effect, requested binding instructions. At the trial the Commonwealth had the burden of showing, first, that the defendant was a bailee of the car, within the meaning of the section of the Penal Code under which the indictment was drawn; and, second, that he had fraudulently converted it to his own use. Upon a review of the whole record we are satisfied that the question upon which this appeal turns is whether the defendant was a bailee of the car within the meaning of this penal statute. If the evidence for the Commonwealth fails to show that he was such a bailee, the second question becomes immaterial. The characteristics by which we are to distinguish a bailee of property, within the intendment of the Penal Code, from a vendee under a contract for the conditional sale thereof, were carefully and fully considered by our Supreme Court in Commonwealth v. Chathams, 50 Pa. 181, and Krause v. Commonwealth, 93 Pa. 418, and in the latter case the duty of a trial judge in a case of this kind was also indicated. Speaking of the

defendant in that case Mr. Justice TRUNKEY, delivering the opinion of the court, said: "Villainous as his conduct was, this conviction ought not to stand, unless he was a bailee within the intendment of the act. The word bailee is a legal term, to be understood in its generally accepted sense among jurists, and if it be doubtful whether a case be included it shall be excluded, in the construction of a criminal statute," and again, "In favor of the liberty of the citizen, the court may, and in a proper case, should declare the evidence insufficient to convict: Pauli v. Commonwealth, 89 Norris 432."

We therefore address ourselves to a consideration of the facts proven by the Commonwealth (which, since the defendant offered no evidence, must be taken as true) and of the fair inferences deducible therefrom. We are not here concerned with the civil rights or remedies of the prosecutor against the defendant, but solely with the question whether a crime has been committed against the Commonwealth. The car in question was manufactured by the Chevrolet Motor Company and the General Motors Acceptance Corporation, the alleged bailor, is a finance corporation. From the testimony it appears that the finance company is owned by the General Motors Company, which also owns, among others, the Chevrolet Motor Company. The Acceptance Corporation finances the sale of cars by all the companies in the General Motors group.

In June, 1926, the defendant came into possession of four automobiles, one of them being the car involved in this case, under these circumstances: The four cars were shipped over the lines of a common carrier to Easton under an order bill of lading, in which the Chevrolet Motor Company was named as the consignee and the Williams Motor Company was designated as the party to be notified. The Commonwealth did not offer in evidence any of the records of

the common carrier, and the name of the consignor is not disclosed by the evidence. It is asserted in the brief for the Commonwealth that the Chevrolet Motor Company was also the consignor. In accordance with the usual business practice, the bill of lading, with a sight draft attached for the purpose of securing payment to the consignor before delivery of the automobiles by the carrier, was sent to the Northampton National Bank at Easton. There was also attached to the bill of lading a paper designated in the testimony as a "trust receipt"—consisting of two parts: the trust receipt proper and a promissory note, containing a warrant of attorney to confess judgment, printed at the bottom—and a perforated sheet of forms referred to in the testimony as "release orders." The bill of lading was endorsed in blank by the Chevrolet Motor Company. The defendant went to the bank and there signed the trust receipt and the promissory note, and the bank delivered to him the sight draft, the bill of lading and the release orders and mailed to General Motors Acceptance Corporation the trust receipt and promissory note. Under the endorsed bill of lading defendant obtained possession of the four automobiles from the common carrier.

Although the testimony for the Commonwealth is not as complete as it might have been, we think it is a fair inference from all the testimony that the General Motors Acceptance Corporation, acting through the bank, paid the Chevrolet Motor Company the amount of the draft drawn upon Williams or, in other words, financed the purchase of the four cars for him and attempted to secure itself against any loss by requiring Williams to execute the trust receipt and promissory note. It is also a fair inference from the evidence that the finance company never had physical possession of the cars. The material provisions of the trust receipt covering the four cars above mentioned read: "I (we) hereby acknowledge that said Motor Vehicles

are the Property of said General Motors Acceptance
Corporation and agree to take and hold the same, at my
(our) sole risk as to all loss or injury, for the purpose
of storing said property; and I (we) hereby agree to
keep said Motor Vehicles brand new and not to operate
them for demonstrating or otherwise, . . . . . . and to
return said Motor Vehicles to said General Motors
Acceptance Corporation or its order upon demand;
and to pay and discharge all taxes, encumbrances and
claims relative thereto. I (we) hereby agree not to
sell, loan, deliver, pledge, mortgage, or otherwise dis-
pose of said motor vehicles to any other person until
after payment of amounts shown on Release Orders
of like identification number herewith.'' By the
promissory note attached to and forming a part of
the trust receipt, defendant agreed to pay to the order
of the finance company $1,698 (of which amount $538
was for the sedan mentioned in the indictment) three
months after date, and authorized the confession of a
judgment in the event of his default.

The Commonwealth did not offer in evidence any
documents showing the form of the ''release orders''
referred to in the trust receipt, but we gather from the
testimony of the prosecutor that one of these orders
was issued for each car; that they were printed forms
containing identification marks corresponding to the
marks on the cars; and that when the dealer sold a
car he was required to send in, along with his check
to be applied upon his promissory note, the appro-
priate release order for that particular car. In the
usual operation of the plan, when defendant sold the
sedan to Shultz, he should have sent his check for
$538 to the finance company, to be applied upon his
promissory note, and the check should have been ac-
companied by the release order for that particular
car. The finance company employed inspectors to
check the cars on the floors of dealers and to verify
the notes at the bank when one or more cars were

sold and report the serial number of the note, its due date, and whether it had been paid. It is significant that under the plan of the finance company "every note is required to be paid when due, even though not a car has been sold before the maturity date."

A large number of cars were delivered to the defendant from time to time under the plan which we have outlined and the automobile with which we are concerned was one of forty-six upon which he had not paid his notes to the finance company at the time of his bankruptcy. In its essential features the transaction in this case was quite similar to that outlined by Mr. Justice SCHAFFER in the recent case of Wendel v. Smith et al., 291 Pa. 247. In that case Blough was the dealer and borrowed from Wendel a large part of the money necessary to finance his purchase of cars. Blough executed a note to Wendel for the money advanced by him and, using the language of the opinion, "pledged a certain automobile designated in the note as security therefor; in addition, Blough, who was a garage keeper, gave to Wendel a storage receipt for the car pledged." It is then stated that the cars were not at any time in Wendel's physical possession but were taken by Blough to his garage and salesroom for sale by him. Wendel testified that at the time of each transaction he went to Blough's place of business, took possession of the particular automobile which was pledged and placed thereon, either on the instrument board or on the steering wheel, a card stating that the car was his property. "The cars remained in the possession of Blough just as they had been before the tags were put on and it was understood between Wendel and Blough that the latter should sell them on condition that the note, for which any car was pledged, should be paid from the proceeds of its sale." It was held that Wendel could not assert title as against the trustees in bankruptcy of Blough. See also Sterling Commercial Company v. Smith et al., 291 Pa. 236, for

another case in which the transaction was similar to the one here under discussion and in which a storage receipt was given by the dealer, under which he "agreed to keep the motor in his show room and return it to plaintiff [the finance company] on demand." The storage receipts referred to in the cases cited are comparable with the trust receipt in this case. These cases relate, it is true, to the rights of purchasers from and creditors of the dealer—questions not involved in this case—but they, along with Root v. Republic Acceptance Corporation, 279 Pa. 55, and Republic Acceptance Corporation v. Smith, 88 Pa. Superior Ct. 349, show that in a complicated transaction, such as this one, courts will look into the real nature of the transaction. In the language of Mr. Justice SCHAFFER in Root v. Republic Acceptance Corporation, supra: "The complicated dealings between many of those trafficking in and loaning money on automobiles has reached a point where the courts must strip transactions of their pretences and look at them as they really are, with the camouflage of papers giving a similitude of the passing of title removed, or they will be dealing with fictions instead of facts. Those who buy and sell, bail and loan money on motor vehicles must be given to understand that the realities of their transactions will be sought for by the courts; they will look through the screen of paper titles to ascertain what was the real situation."

Assuming for the purposes of this case that the finance company acquired title to the car in question (although the Commonwealth did not produce satisfactory evidence as to how such title was acquired) and assuming, in the language of its exhibit explaining its methods, that "the trust receipt . . . . . . is the legal document which embodies the terms under which the dealer obtains possession (but not title) of cars shipped on the 'floor plan'," we must still inquire what the real transaction was under all the evidence.

The credit manager of the finance company, referring to a conversation with defendant about this car and other cars, testified: "I said to Dan Williams that our car check revealed the fact that he was short cars, cars we held as collateral; and he admitted he was short of cars, and he stated the cars were not on hand and that he had not paid us." The assistant sales manager of the Chevrolet Motor Company stated on the stand that he was familiar with the contents of the trust receipt and other papers, and, in reply to the question "And you knew, of course, that the dealers were not expected to keep these cars?" replied, "No; they were expected to sell them." He further testified that in the course of a conversation with defendant he had expressed surprise, not that the defendant had sold the cars, but that he had failed to account for their proceeds. These statements that the cars were placed in the possession of defendant for sale and that they were regarded as collateral on the loan from the finance company, for the repayment of which defendant had given his promissory note, are not consistent with the legal conception of the kind of a bailment contemplated by our Penal Code, as construed in Krause v. Commonwealth, supra. Nor are they consistent with the conception of a bailment as defined for this court by Judge HENDERSON in Commonwealth v. One Nash Roadster, 91 Pa. Superior Ct. 600, and by Judge KELLER in Hoeveler-Stutz Company v. Cleveland Motor Sales et al., 92 Pa. Superior Ct. 425, in which an opinion is this day filed. As expressed by the Supreme Court in Sterling Commercial Company v. Smith et al., supra, "the conclusion is inevitable that the real purpose of the transactions between the [finance company and the defendant] was to secure payment of the loans" made to the defendant to enable him to purchase cars from the manufacturer, which, as received by him, were pledged to the finance company as collateral upon his promissory note. The in-

tention was that the cars should be sold by the defendant and the designated part of the proceeds paid over to the finance company which had advanced the price of the cars to the manufacturer. The finance company was never in physical possession of the cars and it was never intended that they should actually be returned to it. A controlling feature in this case is the taking by the finance company of defendant's promissory note for the price of the car. The finance company placed this car in defendant's possession, retaining as between it and him the title in itself, and then took his promissory note for its value. It was understood that defendant was to sell the car and pay the note out of the proceeds. Payment of the note would have been a complete performance of defendant's contract and he was not bound to return the car. Under the authority of Krause v. Commonwealth, supra, the transaction here was something more than a bailment; it was a contract that defendant would pay the price or return the property, title in the meantime to be in the finance company; it was a conditional sale and defendant was not a bailee in the statutory sense. A majority of the members of this court are of opinion that defendant's motion for a directed verdict should have been granted.

The judgment is reversed and the defendant discharged.