HOLCOMB & HOKE MANUFACTURING COMPANY, APPELLANT,
v. N. P. DODGE COMPANY, APPELLEE.

FILED APRIL 22, 1932. No. 28062.

*Fradenburg, Stalmaster & Beber, O. T. Doerr, P. M. Klutznick* and *Smith, Remster, Hornbrook & Smith,* for appellant.

*Crofoot, Fraser, Connolly & Stryker* and *Harry Shackelford, contra.*

Heard before GOSS, C. J., EBERLY and PAINE, JJ., and BEGLEY and ELDRED, District Judges.

ELDRED, District Judge.

This action was brought by Holcomb & Hoke Manufacturing Company, plaintiff and appellant, to recover from N. P. Dodge Company, defendant and appellee, an amount alleged to be owing plaintiff by C. G. Trimble, Jr., doing business as the Omaha Radio Company, on account of merchandise claimed to have been purchased by him of the plaintiff; the plaintiff's cause of action against the N. P. Dodge Company being founded upon a guaranty of said company. After plaintiff had offered its evidence and rested, the defendant moved for a directed verdict, which motion was sustained by the trial court, and plaintiff appeals. The guaranty relied upon was directed to plaintiff and is as follows:

"The N. P. Dodge Co., holding company of the N. P. Dodge Corp., hereby guarantees the account of the Omaha Radio Co., for any and all merchandise purchased. Such merchandise will be ordered only by Mr. C. G. Trimble, Jr., and only his signature as shown below will be accepted as an order."

C. G. Trimble, Jr., filed answer, but the issues raised by him are not material on this appeal.

On the part of the defendant N. P. Dodge Company, it is contended that the instrument sued upon does not constitute a guaranty of any of the transactions between the plaintiff and the intervener, Trimble, in that such transactions were not purchases of merchandise. It will be noted that the guaranty only purports to cover the account of the Omaha Radio Company for merchandise purchased. The crux of this appeal is: Did the transactions between plaintiff, Holcomb & Hoke Manufacturing Company, and C. G. Trimble, Jr., constitute a purchase and sale of merchandise, i. e., conditional sale contracts? or, were they mere bailments or consignments of personal property?

The evidence fairly tends to establish that plaintiff, in reliance upon said guaranty, shipped and delivered to appellee, Trimble, nineteen electramuse phonograph machines, each involving a separate transaction, and set forth in as many causes of action, and that all of such machines were delivered under the provisions of certain instruments designated "Order Memorandum," "Trust Receipts," and "Time Drafts." The instruments involved in each cause of action are identical in substance and form, except a slight difference in dates and amounts. The order is designated, "Order Memorandum. Trust Receipt Plan." It requests shipment to Trimble of a specifically described instrument and designates Trimble as "Dealer" and plaintiff as "Owner," and recites:

"The Dealer has accepted a time draft as provided for in said trust receipt and contract of even date, payable 90 days from the date of shipment by the Owner of said

instrument in the sum of seven hundred thirty 20/ dollars ($730.20) with interest at the rate of six per cent. (6%) from maturity."

The trust receipt provides:

"C. G. Trimble, Jr., of Omaha, Nebraska (hereinafter called the Dealer), and Holcomb & Hoke Mfg. Co., of Indianapolis, Indiana (hereinafter called the Owner) upon receipt by the Dealer from the Owner, of one Electramuse Phonograph, model number —, serial number 4037 (hereinafter called 'Instrument'), complete with standard catalogue attachments and equipment, in consideration of the following mutual promises, hereby agrees as follows:

"1. The Dealer shall have only possession of, and it is agreed that the Owner is now and shall continue to remain the Owner of the legal title to the Instrument, except as hereinafter provided.

"2. The Dealer shall have the right and privilege of placing the Instrument in the custody of a prospective customer on approval for a period not exceeding three days, and shall be liable to the Owner for all damages resulting therefrom.

"3. The Dealer shall not pledge, loan or part with the possession of the Instrument (except as above provided to a prospective customer) or mortgage the same, and shall pay all taxes thereon, and suffer no claims or incumbrances or liens to be made thereon.

"4. The Dealer hereby signs the acceptance of a time draft, drawn by Owner against Dealer, evidencing the value of said Instrument, and payable in 90 days after the date of shipment of said Instrument by the Owner, and the Dealer shall have the privilege of selling the Instrument at or any time prior to the maturity of said draft and shall within five (5) days after such sale pay said draft in full; and if the Instrument is not sold, either conditionally or unconditionally before the maturity of said draft the Dealer agrees to pay said draft at the maturity thereof. Upon the payment of said draft in full all right, title and interest of the Owner in and to said instrument shall vest in the Dealer.

"5. The Dealer agrees to keep the Instrument in good order and unused (except as herein provided).

"6. The Owner may at any time prior to the sale of the Instrument, whether conditional or unconditional cancel this receipt and contract upon five (5) days' written notice mailed to the Dealer's last business address known to the Owner, whereupon the Owner shall be entitled to immediate possession of the Instrument. If said draft is not paid at its maturity as provided herein and if the Instrument is not sold conditionally or unconditionally at maturity of said draft, the Owner at its option shall be entitled to immediate possession of the Instrument. In the event of insolvency, bankruptcy, compromise, suspension of business or breach of this agreement, said draft shall immediately become due and payable and the Owner shall be entitled to immediate possession of the Instrument without demand, provided the Instrument is not then sold conditionally or unconditionally.

"7. If the Owner becomes entitled to the immediate possession of the Instrument under any of the provisions of paragraph 6 herein, the Dealer agrees to pay to the Owner liquidated damages for the detention of the Instrument a sum equal to one per cent. (1%) of the unpaid balance of said draft for each month or part thereof that the Instrument is detained by the Dealer from the time the Owner shall become entitled to the possession thereof under the provisions of paragraph 6 hereof and to pay to the Owner all costs, charges, expenses, disbursements and reasonable attorney fees in the sum of ten per cent. (10%) of the unpaid balance of said draft. If the Instrument is repossessed by the Owner from the Dealer, the Owner shall retain all payments made on said draft as and for the privileges granted hereunder.

"8. The Dealer agrees to keep a separate account of the Instrument and report to the Owner any sale thereof immediately after the same is made, and shall permit the duly accredited representative of the Owner to examine the Instrument at any and all reasonable times during business hours.

"9. The acceptance of a time draft by the Dealer herein shall not in any way affect the Owner's title to said Instrument and shall not be effective to terminate this trust receipt and contract or affect any other provisions hereof.

"10. This trust receipt and contract shall become binding and effective only on the acceptance thereof by the Owner in writing, at Indianapolis, Indiana, and shall be construed and given effect according to the laws of the state of Indiana."

Accompanying the trust receipt is a time draft payable in 90 days for the sum of $730.20, drawn by plaintiff upon Trimble, and accepted by Trimble. The time draft provides: "This time draft is drawn and accepted pursuant to a trust receipt and contract of even date."

It was stipulated on the trial that the printed portions of the three instruments just referred to were forms furnished by plaintiff, appellant. In arriving at their classification and meaning the purpose sought to be accomplished may be considered. We cannot escape the conclusion that in the preparation of these forms the intention of the plaintiff was to draw such an agreement as would protect appellant's right to the property, without the necessity of filing it for record under the recording statutes, and such as could not be considered a conditional sale contract. Almost every clause betokens such a purpose. In the present case appellant contends that it failed in its purpose; while on the part of the appellee it is urged that the purpose of appellant was accomplished.

Able and instructive briefs have been filed by counsel, discussing the authorities from many jurisdictions, from which it appears that the holdings are far from harmonious; some considering "an absolute promise to pay" as a controlling factor, while others look upon the "right to demand return of property at any time" as of greater effect. However, it would appear unnecessary to determine where the weight of authority may be in other jurisdictions, as this court in the analogous case of *General*

*Motors Acceptance Corporation v. Hupfer,* 113 Neb. 228,
held a similar transaction not to constitute an absolute
sale, mortgage, conditional sale, or lease, but to estab-
lish the relation of bailor and bailee. Counsel for ap-
pellant in the brief, referring to the *Hupfer* case, say:
"We do not disagree with the decision and the language
of the court in the *Hupfer* case." But it is contended
that the transaction was wholly different. Reading the
opinion in the *Hupfer* case, without knowledge of all the
facts involved in the transaction in controversy, as dis-
closed by the records then before the court, one may not
be clear as to the holding in that case. However, from
an examination of the bill of exceptions in the *Hupfer*
case it appears that, at the time the receipt set out in
the opinion was executed, Trotter, the dealer, executed
and delivered to the General Motors Acceptance Corpora-
tion his promissory note evidencing the indebtedness.
The oral testimony of the general manager of the plain-
tiff company in that case establishes such fact; the trust
receipt in that case bears the identification number C. P.
673; the note given bears the same identification num-
ber, and by its terms the dealer unconditionally promised
to pay the General Motors Acceptance Corporation $4,-
479.18 four months after date.

The salient features in that case and the instant case
appear the same. While the trust receipt in the *Hupfer*
case and in the case at bar differ in form, yet in sub-
stance they are closely analogous. They each deal with
the terms and conditions upon which the dealer is given
the possession of property, indicating a relationship of
bailor and bailee, as distinguished from a sale or pur-
chase under conditional sale contract. In each instance,
before the owner delivered the property to the dealer, the
trust receipt reserving the complete ownership of the prop-
erty was executed and delivered. In each case the receipt
outlined and limited the use that might be made of the
property. The receipt in the *Hupfer* case provides that
the dealer would return the property upon demand, while

in the instant case it provides that the owner could retake possession of the property upon five days' notice. In the *Hupfer* case a note was taken for the consideration, identified in the same manner as the trust receipt, while in the instant case a time draft was taken for the consideration. In each case the instrument given was an unconditional promise to pay the consideration evidenced thereby, at a fixed and definite time, and in each case title to the property involved could be secured by dealer by paying such evidence of indebtedness. In the *Hupfer* case the receipt acknowledges that the vehicles are the property of the acceptance corporation, while in the instant case the receipt provides that the acceptance of a time draft by the dealer herein shall not in any way affect the owner's title to the instruments. The delivery of the instruments under the receipts involved in this case did not amount to a sale and purchase of merchandise.

We conclude that this case is controlled by the holding in *General Motors Acceptance Corporation v. Hupfer, supra.* The instruments involved in this action having been delivered by plaintiff to Trimble, under the trust receipt, the legal effect of which establishes only the relation of bailor and bailee, the guarantor is not liable to appellant under the guaranty of any and all accounts for merchandise purchased.

The judgment of the district court is

AFFIRMED.