UNITED STATES of America,
Plaintiff,

v.

Glenn P. MAULDING, Defendant.

Cr. No. 1839.

District Court, Alaska
Fourth Division, Fairbanks.

Dec. 17, 1956.

George M. Yeager, U. S., Atty., Fairbanks, Alaska, for plaintiff.

T. N. Gore, Jr., Fairbanks, Alaska, for defendant.

HODGE, District Judge.

Defendant was convicted by the verdict of a jury of the crime of embezzlement by bailee, in violation of Section 65–5–62, Alaska Compiled Laws Annotated, 1949, which section provides in part as follows:

"That if any bailee, with or without hire, shall embezzle, or wrongfully convert to his own use, or shall secrete, with intent to convert to his own use, or shall fail, neglect, or refuse to deliver, keep, or account for, according to the nature of his trust, any money or property of another delivered or entrusted to his care or control, and which may be the subject of larceny, such bailee, upon conviction thereof, shall be deemed guilty of embezzlement * * *."

The indictment charged in substance that the defendant feloniously and wrongfully converted to his own use the sum of $2,500, the property of the Bank of Fairbanks, by failing to deliver or account for said money, received by him as the purchase price for a Manhattan House Trailer which was sold by him to Glenn and Janette Hanneman, when it was in fact the property of the Bank of Fairbanks, pursuant to a bill of sale from the Manhattan Trailer Sales Company to the Bank, the defendant having been given custody of the trailer in trust by the Bank.

At the conclusion of the Government's case, the defendant moved for a judgment of acquittal, which was denied by the court. He now moves for a new trial upon the grounds that the court erred in not granting the motion for judgment of acquittal, that the government failed to prove the existence of any relationship of bailor and bailee between the defendant and the Bank of Fairbanks, and other grounds which were disposed of upon oral argument and need not be further considered here.

It is the contention of the defendant, as reflected in his brief in support of such motion, that a document designated "trust receipt" upon which the prosecution was largely based, given by the defendant to the Bank of Fairbanks, did not constitute a contract of bailment between the defendant and the bank nor establish any relationship of bailor and bailee as contemplated under the statute above noted. In this connection, defendant contends that such trust receipt was in legal effect a conditional sale, but if not, it is impossible to ascertain with certainty just what it is, except that it is not a contract of bailment.

The determination of this question requires an examination of the nature of the transaction between the bank and the defendant, and the nature and effect of the trust receipt, which appears from its face to have been issued pursuant to the Uniform Trust Receipts Law of Alaska (Chap. 40, S.L.A. 1951). The defendant had entered into a "Floor Plan Agreement" with the bank under the terms of which the bank agreed to finance the acquisition of trailers for the defendant as a dealer, doing business as Maulding Trailer Sales, prior to sale by the defendant, whereby the bank acquired title to the vehicle direct from the manufacturer-seller upon an invoice showing sale to the bank which was paid by the bank on sight draft, and "floored" the vehicle for retail sale by the defendant under the terms of a trust receipt executed by defendant to the bank. By such trust receipt covering the particular trailer involved, the defendant acknowledged receipt of such property from the bank, called "entruster", as "trustee", and acknowledged that a "security interest" in such property remains with the entruster until payment in full by him of a note annexed thereto, subject to the conditions and agreements contained on the reverse side thereof.

The promissory note, which is a part of said instrument, is for the sum of $2,500, payable upon demand, and contains the following pertinent clause:

"This Note is issued under the Floor Plan Agreement, and any amendments thereto, dated June 16, 1952, and delivered by the undersigned to the above-named payee and is subject to the provisions thereof. Upon the occurrence of any of the events specified in the said Agreement, the principal hereof may become forthwith due and payable in the manner, upon the conditions and with the effect provided in said Agreement."

The agreement referred to was not introduced in evidence, but it appears that the conditions referred to are set forth in the "Conditions and Agreements Forming a Part of the Trust Receipt" referred to in the body of the instrument and printed on the back thereof, which, so far as is pertinent here, are as follows:

"The Trustee agrees to return any and all of the Trust Property on demand and in good order and unused; to deal with the Trust Property as trustee for the Entruster, but with the right in the Trustee to exhibit the same and to sell all or any part of the same for the account of Entruster for cash and, if a minimum sale price has been specified by the Entruster, for not less than such price; upon the sale of any of the Trust Property (i) to notify the Entruster promptly, (ii) to hold the proceeds in trust for the Entruster and (iii) to deliver such proceeds promptly to the Entruster".

The evidence showed conclusively, and it was admitted upon the trial, that the defendant came into possession of the trailer described in the indictment under this trust receipt, that he sold the trailer to Glenn and Janette Hanneman and that he failed to account to the bank for the proceeds of such sale. The evidence further showed that he failed to notify the bank of such sale or hold such proceeds in trust for the bank but instead used such funds in payment of other obligations of his business, which he then closed and left town, leaving the bank to locate the trailer.

Defendant first contends that the "trust" thus created was not a bailment within the ordinary meaning of such term and cites the Illinois case of People v. Moses, 375 Ill. 336, 31 N.E.2d 585, 587, in which the court states the obvious rule that to sustain a conviction on an act charging larceny as bailee it is necessary that the evidence show there was a bailment and that the property was held by the accused as bailee; and further states as follows:

"In the application of the above principle of bailment to a criminal action of larceny by bailee it is an established rule *that if the owner of goods alleged to have been stolen parts with both the possession and title of the goods to the alleged thief expecting something other than such goods to be returned to him, neither the taking nor the conversion amounts to larceny,* and this is true where the owner is induced to part with the title and the possession through fraud and misrepresentation of the alleged thief. If, however, *the owner parts with the possession although voluntarily, but does not part with the title, expecting and intending that the goods shall be returned to him or disposed of in some particular manner as directed or agreed upon for his benefit, the goods may, under such circumstances, be feloniously converted by the bailee and such conversion relates back and makes the taking and conversion a larceny".* (Emphasis added.)

This decision does not support the defendant's contention but is contrary to it, for in the case at bar the bank did not part with the title but parted only with the possession, expecting, according to the terms of the instrument, that the trailer would be either returned to it or disposed of in the manner directed for its benefit.

■ Generally a bailment is defined as a delivery of a thing in trust for some specific object or purpose on a contract expressed or implied that it be rede-

**696**

livered to the bailor or dealt with according to his direction, which may be for the purpose of sale. 5 Words and Phrases, Bailment, pp. 49, 70; 8 C.J.S., Bailments, § 1, p. 222; 6 Am.Jur., Bailments, 177, Sec. 4.

 Whether a contract is a bailment or a conditional sale is to be determined by the substance of the agreement and the intent of the parties. In the case of a bailment, the bailee receives possession but not the title of the goods for a particular purpose, while in a conditional sale, possession is delivered upon an agreement to sell and buy, the property in the goods to remain with the seller until payment of the price. The main distinction or the most approved test is said to be that in a conditional sale there is an absolute promise or obligation to pay the purchase price, while in a bailment there is no such promise or agreement, but the bailee may relieve himself of further liability by surrendering the property. 8 C.J.S., Bailments, § 3, p. 229; 6 Am.Jur., Bailments, 197, Sec. 35; 5 Words and Phrases, supra, p. 52, and cases annotated therein.

Some confusion appears in the earlier decisions as to the application of these principles to trust receipts prior to the adoption of uniform trust receipt laws. But the essential character of this method of securing mercantile loans has now been well established. In the following decisions it is held that a trust receipt of the nature here involved under the uniform laws is neither a conditional sale nor a chattel mortgage, for it is not an unconditional promise to pay a sum certain. Commercial Discount Co. v. Los Angeles County, 16 Cal.2d 158, 105 P.2d 115; Chichester v. Commercial Credit Co., 37 Cal.2d 439, 99 P.2d 1083; In re Boswell, D.C.Cal., 20 F.Supp. 748, affirmed 9 Cir., 96 F.2d 239; Holcomb & Hoke Manufacturing Co. v. N. P. Dodge Co., 123 Neb. 142, 242 N.W. 367.

In the Chichester case the court holds that prior to the adoption of the uniform trust receipt laws, where the title of the entruster was derived from the trustee and not from some third person, the transaction is treated as similar to a chattel mortgage, and therefore void against creditors in the absence of recordation. See also to the same effect, General Motors Acceptance Corp. v. Kline, 9 Cir., 78 F.2d 618, 620. This distinction, however, has been abolished by the later statutes such as the Alaska law which provides that

"The security interest of the entruster may be derived from the trustee or from any other person, and by pledge or by transfer of title or otherwise", (sec. 2, chap. 40, SLA 1951.)

and is not applicable here, as the title in this case was derived from the manufacturer-seller, and not from the trustee.

In the case of In re Chappell, D.C. Or., 77 F.Supp. 573, the court holds that in order to constitute a trust receipt under the uniform law the entruster bank must acquire its security interest prior to or at the time delivery was made to the dealer; but this situation prevails here.

The Boswell case involves a similar situation to the Chappell case, where the retail dealer bought merchandise on an open account from the seller-factory, title passed to him and was pledged to the finance company upon a note and "trust receipt". However, the court in this decision, approved in the case of Chichester v. Commercial Credit Company, in discussing a trust receipt as a form of "security device" as compared to a chattel mortgage or conditional sale contract, states that it is "none of these mediums of trade and credit", 20 F.Supp. at page 751.

The Holcomb & Hoke Mfg. Co. case specifically holds that the legal effect of the trust receipt was to "establish the relationship of bailor and bailee."

Contrary to the contention of the defendant, it will be observed that the promissory note attached to the trust receipt in this case contains no such unconditional promise to pay, but becomes due only upon a sale of the prop-

erty by the dealer or trustee, in which event he is obligated to deliver the proceeds of sale to the entruster; otherwise, to return such property.

■ Another distinction as to whether a contract is a bailment or sale is that the contract is one of bailment when the identical article is to be returned or duly accounted for in accordance with the terms of the bailment; and where the contract contemplates no transfer of ownership to the bailee but rather to a purchaser procured by the bailee, the transaction is a bailment. 6 Am. Jur., Bailments, 190, Sec. 28; 8 C.J.S., Bailments, § 3, p. 227.

The defendant relies principally upon the cases of Commonwealth v. Williams, 93 Pa.Super. 92 (a photostatic copy of which opinion is attached to his brief) and Ahrens Refrigerator Co. v. R. H. Williams Co., 175 Okl. 5, 54 P.2d 200. In the former case, the court considers at length an arrangement whereby the General Motors Acceptance Corporation financed the sale by a dealer of an automobile shipped to the Williams Motor Company as consignee in which a "trust receipt" was executed by the dealer containing a promissory note. The court concludes that as payment of the note would have been a complete performance of the defendant's contract and as he was not bound to return the car, the transaction was something more than a bailment but a conditional sale. However, the opinion of the court contains this pertinent language:

"It is significant that under the plan of the finance company every note is required to be paid when due, even though not a car has been sold before the maturity date".

In accordance with the weight of authority, I am unable to concur in the reasoning of this opinion but do concur in the result.

In the case of Ahrens Refrigerator Co. v. R. H. Williams Co., the goods were shipped under credit to the dealer, with a time draft which the dealer was ab-

solutely obligated to pay, and it was held that the transaction constituted a conditional sale. In this case, the distinction between bailment and conditional sale is clearly defined in the following language, 54 P.2d at page 202:

"The fundamental distinction between a bailment with authority in bailee to sell for bailor and a conditional sale is well settled. In the former, the bailee is made the agent of the bailor with authority to sell bailor's property, and bailee does not become immediately obligated to pay for the property. Barteldes Seed Co. v. Border Queen Mill & Elevator Co., 23 Okl. 675, 101 P. 1130, 1131. In a conditional sale contract, there is immediately created an obligation by the vendee to pay for it".

Defendant also directs our attention to the language of the Uniform Trust Receipt Act with respect to the definition of "entruster", Sec. 1(3), of a "trustee", Sec. 1(14) and of a "security interest", Sec. 1(12). Without reviewing these definitions in detail, suffice it to say that I can find nothing in such definitions or otherwise in the Act with reference to the rights of the entruster or obligations of the trustee which creates any relationship between entruster and trustee in the nature of a conditional sale or chattel mortgage, or otherwise than the relation of bailor and bailee.

Finally, defendant cites Restatement of the Law, ALI, Trusts, Sec. 5, to the effect that "a bailment is not a trust". However, the same text states that

"if the manifested intention is that he (the person to whom delivery is made) shall not thereby acquire the title to the chattel but that he shall acquire only the interest of a possessor, the transaction creates a bailment".

The same text also states that "a trust may be created as a security device" (Sec. 59), and states that such trusts are not covered within the scope of the

Restatement on this subject. Moreover, Sec. 1(14) of the Uniform Act specifically provides that

"the use of the word 'trustee' herein shall not be interpreted or construed to imply the existence of a trust or any right or duty of a trustee in the sense of equity jurisprudence other than as provided by this Act".

■ I find that the transaction between the bank and the defendant under the trust receipt issued in this case constitutes in effect a contract of bailment between the defendant and the Bank of Fairbanks. The motion for new trial will, therefore, be denied.