## HENDERSON et al. v. PONCA CITY MILLING CO.

No. 15861—Opinion Filed Feb. 9, 1926.

### Contracts — Construction — Consideration as an Entirety — Consignment Contract Reserving Title to Merchandise.

Under a consignment contract of merchandise in which title is retained by consignor until sold and paid for, a clause in the contract providing that consignee will purchase at invoice price all of the consignment remaining on hand at the expiration of 60 days from shipment does not change the contract from one of consignment to one of sale until the purchase price is paid, no alteration of the terms of the written contract being claimed or proven. Separate paragraphs or isolated clauses cannot be construed as controlling when violative of the intent of the written contract considered in its entirety.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action in replevin by Ponca City Milling Company against M. M. Henderson and L. C. Utley. Judgment for plaintiff, and defendant M. M. Henderson brings error. Affirmed.

This action was commenced November 21, 1921, by the Ponca City Milling Company filing its petition and affidavit in replevin against the defendants M. M. Henderson and L. C. Utley, to recover possession of a number of sacks of flour and meal of the value of $404, which were alleged to be the property of the plaintiff and wrongfully detained by the defendants. Defendant M. M. Henderson answered by a general denial, but there was no appearance for the defendant Utley.

The flour and meal in question was manufactured by the Ponca City Milling Company and shipped to L. C. Utley at Asher under a consignment contract. Later Utley sold and conveyed his stock of merchandise and fixtures at Asher to M. M. Henderson. After Henderson took possession of the stock and fixtures the Ponca City Milling Company made claim to the flour and meal in question, and which was included in the stock of merchandise transferred to Henderson by Utley. Henderson claimed title by reason of the transfer from Utley, and refused to deliver possession, whereupon this action was commenced.

Upon the trial of the case and at the conclusion of all the testimony, both parties, plaintiff and defendant Henderson, filed motions for a directed verdict, and thereupon it was agreed in open court that the jury might be discharged and the court render judgment in the action upon its construction of the consignment contract between the Ponca City Milling Company and L. C. Utley. Judgment was thereupon rendered in favor of plaintiff, and after unsuccessful motion for new trial the defendant Henderson has brought the case here by petition in error with case-made attached for review.

A. J. Carlton, R. R. Hendon, and F. H. Reily, for plaintiffs in error.

E. C. Stanard and M. L. Hankins, for defendant in error.

Opinion by LOGSDON, C. Only one question is presented and argued upon the merits of the case, and that is as to the proper construction of the consignment contract. Omitting formal parts the consignment contract involved reads as follows:

"This agreement witnesseth that L. C. Utley, of Asher, is hereby constituted an agent for the Ponca City Milling Company, to handle the grain products of said company in the town of Asher, state of Oklahoma. Said products to be sold for cash at a price to net the Ponca City Milling Company, the amount specified in the invoice sent at time of shipment.

"Said agent hereby agrees to make remittance to the Ponca City Milling Company each Monday for the amount sold the week before, and to keep the proceeds of all sales separate from any other money. Said goods to remain the property of the Ponca City Milling Company, and subject to their order at any time until all are sold and remitted for.

"Said agent agrees to insure said goods in the sum of $500 in the name of the Ponca City Milling Company, and store said goods in a suitable warehouse free of charge and be responsible for any damage.

"Said agent agrees further that any goods remaining in his hands at the expiration of 60 days from date of invoice, that he will purchase said goods at invoice price and re-

mit in full at the expiration of 60 days from date of invoice. In case of failure and unless remittance is received the said Ponca City Milling Company is to make sight draft any time after 3 days beyond said 60 days.

"It is also agreed that in shipping another car that sight draft shall be drawn to cover in full any previous shipment.

"This agreement to cover all shipments from said company until changed in writing signed by both parties."

The gist of defendant's argument, that title to the property became vested in Utley under the terms of the above contract and passed to Henderson by the transfer and delivery of possession, is contained in the following paragraph in the brief of defendant, beginning on page 10:

"The first three paragraphs of the consignment contract have to do with and are concerned solely with the relations of the parties and the status of the property prior to the expiration of the 60-day period mentioned in the fourth paragraph; after the expiration of the 60-day period the relations of the parties and the status of property are controlled and established solely by the 60-day provision, to wit: the fourth paragraph. When the 60 days from the date of the invoice had expired, to wit: the 8th day of November, 1921, the relation of the parties, the milling company and Utley, became that of debtor and creditor, and the title of the property passed to Utley. By the terms of paragraph 4 of the contract, which was signed up by the milling company and Utley on the 23rd day of August, 1921, Utley says that on the 8th day of November, 1921, he will purchase balance of property remaining in his hands, and pay therefor invoice price; both parties consented to this, and delivery by the milling company to Utley was unnecessary, as he already had in his hands the said property, and that fact constitutes an automatic delivery under the contract. Utley agreed to pay in full at the end of 60-day period but the passing of title was not intended to be dependent upon payment as in the last three lines of said paragraph 4, the company says, if he does not pay it will after three days draw on him."

In determining the soundness of this contention, and the proper interpretation to be placed upon the language of the consignment contract, certain statutory provisions must be kept in mind in determining the meaning and effect of the language used in said contract. Comp. Stat. 1921, sec. 5039, provides:

"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

Section 5041, Id., provides:

"The language of a contract is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity."

Section 5044, Id., provides:

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

Under these plain statutory provisions it is clear that the intention of the parties in making the contract must be considered in determining the effect of the language used. Evidently it was the intention of the parties by this contract to create a market at Asher for the products of the plaintiff and to give to the defendant Utley an opportunity to make a profit from the handling of such products. The sale of the products by the Ponca City Milling Company was the ultimate object in view so far as plaintiff was concerned, and the earning of profits from the sale of this product was the ultimate object of the defendant Utley. The entire contract, considered together, evinces a clear purpose on the part of plaintiff, and an equally clear understanding on the part of Utley, that title to the property should remain in the plaintiff until paid for. There is nothing in the language of the fourth paragraph which changes this evident intention of the parties, because it is provided that at the expiration of 60 days from the date of invoice Utley "will purchase said goods at invoice price and remit in full." This language does not justify the construction contended for by defendant, that title to the goods passed to defendant Utley at the expiration of 60 days, but it clearly comprehends an exercise of volition on his part and the doing of a definite act. In other words, he binds himself to purchase and to remit, but there is no suggestion anywhere in the contract, nor is there any language susceptible of such construction, that without a purchase and remittance by him title to the goods would vest in him.

L. C. Utley testified as a witness in this case, and in reference to what was said at the time of the transfer of the stock to Henderson in regard to the flour and meal in controversy, he stated:

"Well, I told them—that is, Mr. Ellie and Mr. Henderson, that the flour belonged to the Ponca City Milling Company; that it did not belong to the stock; that it was sold to me on consignment."

It is the well-settled rule in this jurisdiction, that in a law action where a jury

is waived and the case is tried to the court, the judgment of the trial court will not be disturbed by this court where there is evidence in the record reasonably tending to support the judgment. It is unnecessary to cite authorities to this effect. A careful reading of the evidence preserved in the record in this case, and a careful consideration of the language of the contract here involved, discloses that there is ample evidence. which reasonably tends to support the judgment of the trial court, and that the same should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 525 § 486; 6 R. C. L. p. 837: 2 R. C. L. Supp. p. 720; 4 R. C. L. Supp. p. 444: 5 R. C. L. Supp. p. 372.