## AHRENS REFRIGERATOR CO. v. R. H. WILLIAMS CO. et al.

### No. 25619. Feb. 4, 1936.

Billups & Billups, for plaintiff in error.

Orr & Woodford, for defendants in error.

PER CURIAM. The parties herein will be designated as they appeared in the trial court, except that to distinguish between the two interveners, Ahrens Refrigerator Company will be referred to as intervener, and L. W. Crutcher, trustee in bankruptcy of the estate of H. E. Brinson, will be referred to as trustee. Plaintiff brought this action in the district court of Hughes county on July 25, 1932, for a money judgment on a promissory note executed by defendant, and on the same date had garnishee summons issued and served upon garnishee and defendant. Garnishee answered stating that it held certain funds deposited to the credit of defendant. Thereafter, defendant was ad-

judged a bankrupt, and a trustee in bankruptcy was appointed for his estate, who intervened herein to preserve the garnishment lien claimed by plaintiff for the benefit of the bankrupt's creditors under section 67-F of the National Bankruptcy Act. Prior to trustee's intervention, intervener had intervened herein, claiming that a part of the funds garnished were the proceeds of the sale of certain refrigerators consigned to and sold by defendant. and that the title to these refrigerators prior to their sale by defendant and to the proceeds arising from such sale. was in intervener by virtue of the provisions of an instrument styled "Trust Receipt," and not subject to attachment or garnishment by creditors of defendant.

It is unnecessary to refer further to the pleadings. A jury was waived and the trial resulted in judgment for plaintiff against defendant on the note, upholding the garnishment proceedings, decreeing the trust receipt under which intervener claims void as against trustee, denying intervener's claim to the funds garnished, and directing garnishee to pay these funds to trustee. Intervener makes several assignments of error. but in its brief condenses them to the following two propositions:

"1. The trust receipt of the intervener sets up the relation of bailor and bailee between the intervener, Ahrens Refrigerator Company, and the defendant, H. E. Brinson, and is a valid, binding and subsisting agreement enforceable against the trustee of the bankrupt's estate and that said agreement is not subject to the statutory provision pertaining to conditional sales contracts."

"2. That the proceeds of the sale of trust property can be traced and recovered by the cestui que trust when and where found."

Only the first proposition need be considered. The trust receipt under which intervener claims was accepted by defendant at Holdenville under date of June 20, 1932, and filed in the office of the county clerk of Hughes county July 27, 1932, two days after the garnishment summons was issued and served. Its material provisions are as follows:

"Received from Ahrens Refrigerator Company of Oklahoma City, Okla., herein called distributor, the following described General Electric Refrigerators herein called 'Property' shipped or delivered to undersigned **under credit opened by Distributor for account of Undersigned."** (Emphasis ours.) (Items of property omitted.)

"In consideration thereof undersigned

agrees to hold said property in trust for distributor as its property, and to return all or any of said property to distributor upon demand. Distributor at any time may examine said property and the books or records of undersigned with reference thereto. Distributor may at any time cancel this trust and may take possession of said property without notice or demand, and for such purpose it or its representatives may enter any premises at any time without legal process. Undersigned shall not lend, rent, mortgage, pledge, incumber, operate, use or demonstrate said property but shall move said property from the place where delivery or custody is taken hereunder direct to undersigned's place of storage, where undersigned shall keep the same properly housed without expense or liability to distributor. Undersigned, before the termination of this trust, may sell said property for cash for not less than the sum or sums mentioned in the 'Wholesale-Storage' record of such property given by distributor to undersigned, and **immediately after such sale undersigned shall deliver the proceeds thereof to distributor, and until delivery shall hold said proceeds in trust for distributor separate from the funds of undersigned.** (Emphasis ours.)

"The acceptance of a time draft by undersigned or the negotiation of same and the assignment of this trust receipt shall not affect or terminate this trust, the intention being to preserve unimpaired the title and rights of distributor in and to said property. If undersigned fails to sell said property or to pay said draft or breaches this trust receipt, then distributor may retain any sums paid by undersigned as a consideration for the privilege of displaying said property and offering the same for sale.

"Undersigned shall pay all costs and expenses, including attorney's reasonable fees, if permitted by law, that distributor may incur or pay to protect or enforce its rights hereunder, whether by legal proceedings or otherwise."

On the date that he accepted the trust receipt, defendant accepted an instrument styled "Time Draft" for a sum certain, drawn on him by intervener, payable at one month's sight to the order of intervener, with interest after maturity, and providing for an attorney's fee if placed with an attorney for collection. The uncontradicted testimony of the credit manager of intervener is that this time draft covered the items contained in the trust receipt. There is no evidence that plaintiff or any other creditor of defendant had any actual notice of this arrangement between intervener and defendant prior to the date that the garnishee summons was issued and served.

The refrigerators referred to in the trust receipt were shipped by intervener to defendant at Holdenville, and three of them were sold by defendant to parties in Hughes county for part cash, with balance payable in installments, the transactions being evidenced by conditional sales contracts in favor of defendant. Defendant then sold these conditional sales contracts to a finance company and deposited the amount received therefor with garnishee and drew a check on his account with garnishee, which check he forwarded to intervener under date of July 22, 1932, stating that it covered certain identified items of the property referred to in the trust receipt, and that "this leaves one S-67 on note which I will take care of in a few days." Intervener received this check without objecting to the position taken by defendant in remitting same, and in the usual course of business deposited it to its credit in a bank in Oklahoma City. The check was not paid because of the garnishment, and intervener claims title to the funds garnished to the extent of the amount of this check.

The single question presented on this phase of the case is whether the arrangement between intervener and defendant was one of bailment or conditional sale. If it were the latter, the trust receipt not being filed in the office of the county clerk of Hughes county, wherein the property was kept at the time the garnishment was served, the attempted retention of title to the property and its proceeds, in intervener, was invalid under O. S. 1931, sec. 11906, as to creditor of defendant represented by trustee who had acquired by garnishment a lien on the proceeds of such property. Rock Island Implement Co. v. Fagerquist, 99 Okla. 282, 227 P. 117.

The general rule followed in determining whether a given contract is one of conditional sale of personal property is to ascertain from the contract itself and the circumstances attendant upon its execution, the real intent of the contracting parties at the time the contract was made. Phelan v. Stock Yards Bank, 134 Okla. 13, 276 P. 175; Union Stock-yards & Transit Co. v. Western Land & Cattle Co. (C. C. A. 7th) 59 F. 49, 54. The fundamental distinction between a bailment with authority in bailee to sell for bailor and a conditional sale is well settled. In the former, the bailee is made the agent of the bailor with authority to sell bailor's property, and bailee does not become immediately obligated to pay for the property. Barteldes Seed Co. v. Border Queen Mill &

Elevator Co., 23 Okla. 675, 101 P. 1130, 1131. In a conditional sale contract, there is immediately created an obligation by the vendee to pay for it. Barteldes Seed Co. v. Border Queen Mill & Elevator Co., supra.

The chief difficulty in deciding cases of this character is that a contract may possess some of the characteristics both of a bailment and a conditional sale. In construing this contract, we apply the test aptly stated by the Court of Appeals of Georgia in McKenzie v. Roper Wholesale Grocery Co., 70 S. E. 981, as follows:

"So that, in determining whether a contract is to be construed as a conditional sale or construed as a consignment, many of the details of the transaction may be disregarded, except in so far as they may be more or less evidentiary of the one thing by which these two forms of contract are legally differenced—and that thing is whether the bailee upon receipt of the goods assumes liability for the purchase price."

This rule supported by numerous decisions is stated in 6 C. J. p. 1088, in the following language:

"If the bailment is coupled with an agreement by which the bailee is bound to buy, the transaction will be deemed a conditional sale."

In a note in 17 A. L. R. p. 1437 and ff., the prevailing rule is stated and many of the authorities in its support are collected. The language there used is as follows:

"Contracts containing elements of conditional sale also frequently contain elements of agency or consignment contracts. In determining the character of the contract in this regard, the test usually applied is as to whether or not the buyer or consignee is obligated, at all events, to pay the purchase price of the subject-matter of the contract. If he is, in a majority of the cases, the contract is construed to be one of conditional sale, and not a consignment contract."

See, also, authorities cited in Note, 43 A. L. R., p. 1248. There may be certain cases from other jurisdictions which, upon analysis of their facts, will appear inconsistent with the principles herein announced. If so, they are inconsistent with Barteldes Seed Co. v. Border Queen Mill & Elevator Co., supra, and the weight of authority in the courts of this country, and we decline to follow them.

Intervener earnestly contends that the transaction between it and defendant did not amount to a sale of these refrigerators to defendant, but one whereby this property was consigned to defendant for sale by the latter on its behalf, and cites In re Columbus Buggy Co. (C. C. A. 8th) 143 F. 859; Franklin v. Stoughton Wagon Co. (C. C. A. 8th) 168 F. 857; In re Taylor (D. C. S. D.) 46 Fed. (2d) 326; Akin, Sheriff, v. Baldwin Piano Co., 62 Okla. 239, 162 P. 221, and Henderson v. Ponca City Milling Co., 116 Okla. 169, 243 P. 743, wherein contracts were construed to be bailments and their validity upheld, although they were not recorded. In the last-cited case, the question was the right of possession of certain flour as between consignor and a purchaser from the consignee with actual notice of the arrangement under which the latter held the flour, so that the question now before us was not involved. It is unnecessary to distinguish in detail the other cases cited. Suffice to say that, while they differ in their facts from the instant case, they recognize the principles herein announced, and this decision is not inconsistent with them.

The trust receipt before us expressly states that the refrigerators were shipped "under credit opened by distributor (intervener) for account of undersigned (defendant)." Before the termination of the trust, defendant could sell the property for cash for not less than the sums mentioned in the wholesale storage record of the property given by intervener to defendant. The record does not disclose these prices, but we assume that they must have been at least equal to the amount stated in the time draft drawn by intervener on defendant and accepted by the latter at the time the trust receipt was executed. It is established that the time draft was for the items stated in the trust receipt.

Supporting our conclusion is another circumstance which distinguishes this case from the cases cited by intervener. In those cases the agreements provided that the bailee should receive a commission from the sale, either in the form of a certain percentage of the proceeds or the excess of the sale price over a stated amount. This trust receipt contains no such provision, but does provide that immediately after a sale defendant shall deliver the proceeds thereof to intervener. In addition, defendant was absolutely obligated to pay the time draft. To our mind, the only reasonable construction which can be placed on these provisions is that the parties intended that intervener should retain title to the property, or to its proceeds in the event of sale, as security for the payment by defendant of the time draft,

and that such proceeds should be applied to payment of the time draft. To construe these provisions otherwise would result in the manifest absurdity of the defendant being obligated both to deliver to intervener the entire proceeds of the sale of this property, and, at the same time, to pay the time draft in full without any compensation whatever. Such an interpretation would be in violation of O. S. 1931, sec. 9467.

Moreover, the record shows that defendant in transmitting the proceeds of the sale of the three refrigerators understood that he was making payment on the time draft, and that intervener acquiesced in this interpretation. In our opinion, the trust receipt and time draft clearly justify the construction we have placed upon them, but if their provisions are to be regarded as uncertain and indefinite, the parties have placed the same construction thereon, and we follow that construction. Hammett Oil Co. v. Gypsy Oil Co., 95 Okla. 235, 218 P. 501, 34 A. L. R. 275.

The provisions of the trust receipt, that the property should continue to belong to intervener, are consistent with the transaction being a conditional sale, in which title was retained in vendor until the purchase price is paid in full. O. S. 1931, sec. 11906. Haubelt v. Bryan & Doyle, 171 Okla. 338, 43 P. (2d) 68; Bailey v. Baker Ice Machine Co., 239 U. S. 268, 60 L. Ed. 284. The right retained by intervener to repossess the property without notice or demand does not vary the construction of the agreement as being one of conditional sale. 24 R. C. L. p. 451; Miller v. Steen, 30 Cal. 402, 89 Am. Dec. 124; Hayes v. Jordan, 85 Ga. 741, 11 S. E. 833; Dederick v. Wolfe, 68 Miss. 500, 9 So. 350; A. D. Puffer & Sons Mfg. Co. v. Lucas, 112 N. C. 377, 17 S. E. 174.

It follows that the transaction between intervener and defendant was one of conditional sale of personal property, and the trust receipt evidencing it not being filed in the office of the register of deeds of Hughes county, where the property was kept, as provided by O. S. 1931, sec. 11906, is void as to trustee representing creditors of defendant claiming under the garnishment lien. The judgment of the trial court is accordingly affirmed.

The Supreme Court acknowledges the aid of Attorneys Edmund Lashley, Gentry Lee, and R. A. Kleinschmidt in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Lashley and approved by Mr. Lee and Mr. Kleinschmidt, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.