**B–W ACCEPTANCE CORPORATION,**
Appellant,

v.

**R. P. COLLEY, Trustee in Bankruptcy of Shafer Tire and Appliance Center, a co-partnership consisting of Bill L. Shafer, Jack A. Shafer, and Jack J. McKenna, Bankrupt, Appellee.**

**In the Matter of Bill L. SHAFER, Jack A. Shafer, and Jack J. McKenna, individually, and as co-partners, trading under the firm name of Shafer's Tire and Appliance Center, Bankrupt.**

**No. 5777.**

United States Court of Appeals
Tenth Circuit.

June 5, 1958.

James H. Harrod, Oklahoma City, Okl., for appellant.

Joe N. Shidler, Tulsa, Okl. (Wm. J. Threadgill, Tulsa, Okl., was with him on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

PHILLIPS, Circuit Judge.

Prior to May 1, 1957, Bill L. Shafer, Jack A. Shafer, and Jack J. McKenna, individuals and copartners, trading under the name of Shafer's Tire and Appliance Center, were adjudicated bankrupts. They are hereafter referred to as Shafer.

R. P. Colley is the duly appointed, qualified and acting trustee of Shafer.

The Borg-Warner Corporation is the manufacturer of Norge products. Borg-Warner Acceptance Corporation[1] is a finance company owned by Borg-Warner. Modern Appliance Distributors[2] is the distributor of Norge products in Oklahoma City.

Shafer was engaged in the sale of Norge products at retail in Oklahoma City.

Upon the receipt by Modern from Shafer of an order for Norge products, Modern prepared three instruments: (1) An invoice showing that the products described therein were sold to the Acceptance Corporation; (2) A promissory note payable to the Acceptance Corporation, whereby Shafer agreed to pay the sum stated in the note, which was the total amount of the invoice, within three months after date, and (3) An instrument designated "Trust Receipt" which described each item by model number and serial number and a release price stated opposite each item.

The three instruments were submitted to the Acceptance Corporation for its approval. Each was approved and they were then signed by the duly authorized attorney in fact of Shafer. Thereupon the goods were shipped by Modern to Shafer. The Acceptance Corporation retained the original promissory note, a copy of the invoice, and the trust receipt. A copy of the trust receipt was forwarded to Shafer. The Acceptance Corporation returned a copy of the invoice to Modern, with its check in payment of the invoice.

The trust receipt in part read:

" * * * Due in full in 90 days or as mdse is sold retail if before due date of contract.

---

1. Hereinafter called the Acceptance Corporation.

2. Hereinafter called Modern.

\*　　\*　　\*　　\*　　\*

"I (we) hereby acknowledge that said articles and any substitutions, exchanges, or replacements thereto are the Property Of Said B–W Acceptance Corporation and agree to take and hold the same, at my (our) sole risk as to all loss or injury, for the purpose of storing said property and I (we) hereby agree to keep said articles brand new, and to return said articles to said B–W Acceptance Corporation or its order upon demand and to pay and discharge all taxes, encumbrances and claims relative thereto. I (we) hereby agree not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of said articles to any other person until after payment of amounts shown in Release Price column above. I (we) further agree that the payment made by me (us), in connection with this transaction, may be applied for reimbursement for any expense incurred by B–W Acceptance Corporation, in the event of breach of this Trust or repossession of said articles.

"It is further agreed that no one has authority to vary the terms of this Trust Receipt."

While the trust receipt provided that Shafer should remit for the appliances described therein before selling or otherwise disposing of the same, it was the practice of Shafer to sell the appliances and thereafter remit the price stated in the trust receipt to the Acceptance Corporation. Such practice was acquiesced in by the Acceptance Corporation.

The Acceptance Corporation filed a reclamation petition, containing three claims. The first claim is not here material. The second claim was predicated on two trust receipts; one dated November 14, 1956, and one dated February 26, 1957, both of which were recorded on May 1, 1957, and after the adjudication in bankruptcy. The third claim was for moneys due and payable to the Acceptance Corporation, collected by Shafer on behalf of the Acceptance Corporation, in the amount of $442.40, and not remitted to the Acceptance Corporation and alleged to have been received by the trustee.

The referee found that the Acceptance Corporation had failed to trace the $442.40 into the hands of the trustee and denied the third claim.

The referee held that the instruments designated "Trust Receipts" were, in fact, conditional sales contracts and concluded that since such instruments were not recorded prior to bankruptcy the Acceptance Corporation was not entitled to recover the items embraced in such instruments, which came into the hands of the trustee.

On petition to review, the order of the referee was affirmed. The Acceptance Corporation has appealed.

■ While there are decisions in other jurisdictions which support the contentions of the Acceptance Corporation on its second claim,[3] the character or legal effect of the instruments involved is to be determined by the local law of Oklahoma.[4]

The case of Ahrens Refrigerator Co. v. R. H. Williams Co., 176 Okl. 5, 54 P.2d 200, 201, presented the question whether an instrument designated a trust receipt, with a time draft, constituted a bailment, a consignment contract, or a conditional sales contract. There, one Brinson, a retailer of refrigerators, executed and delivered to the Refrigerator Company an instrument, the material provisions of which read:

---

3. Hamilton Nat. Bank v. McCallum, 6 Cir., 58 F.2d 912, 913; General Motors Acceptance Corp. v. Kline, 9 Cir., 78 F. 2d 618, 620, 621; In re James, Inc., 2 Cir., 30 F.2d 555, 557, 559. Contra: see cases cited in notes, 168 A.L.R. 379, 101 A.L.R. 464, 87 A.L.R. 308 and 49 A.L.R. 311.

4. Great Western Stage Equipment Co. v. Iles, 10 Cir., 70 F.2d 197; B. F. Avery and Sons Co. v. Davis, 5 Cir., 226 F.2d 942, 946; Remington on Bankruptcy, Rev.Ed., Vol. 3, §§ 1212.03–1213, p. 54.

" 'Received from Ahrens Refrigerator Company of Oklahoma City, Okla. herein called Distributor, the following described General electric Refrigerators herein called "Property" shipped or delivered to Undersigned *under credit opened by Distributor for account of Undersigned.*' (Italics ours.)

" '(Items of Property Omitted.)

" 'In consideration thereof Undersigned agrees to hold said Property in trust for Distributor as its property, and to return all or any of said Property to Distributor upon demand. Distributor at any time may examine said Property and the books or records of Undersigned with reference thereto. Distributor may at any time cancel this trust and may take possession of said Property without notice or demand, and for such purpose it or its representatives may enter any premises at any time without legal process. Undersigned shall not lend, rent, mortgage, pledge, encumber, operate, use or demonstrate said Property but shall move said Property from the place where delivery or custody is taken hereunder direct to Undersigned's place of storage, where Undersigned shall keep the same properly housed without expense or liability to Distributor. Undersigned, before the termination of this trust, may sell said Property for cash for not less than the sum or sums mentioned in the "Wholesale-Storage" record of such Property given by Distributor to Undersigned, and *immediately after such sale Undersigned shall deliver the proceeds thereof to Distributor, and until delivery shall hold said proceeds in trust for Distributor separate from the funds of Undersigned.* (Italics ours.)

" 'The acceptance of a time draft by Undersigned or the negotiation of same and the assignment of this trust receipt shall not affect or terminate this trust, the intention being to preserve unimpaired the title and rights of Distributor in and to said property. If undersigned fails to sell said Property or to pay said draft or breaches this trust receipt, then Distributor may retain any sums paid by Undersigned as a consideration for the privilege of displaying said Property and offering the same for sale.' "

On the same day Brinson accepted an instrument designated "Time Draft" drawn on him by the Refrigerator Company, payable at one month's sight to the order of the Refrigerator Company, with interest after maturity, and providing for an attorney's fee if placed with an attorney for collection. The time draft covered the items contained in the trust receipt.

The court held that the test for determining the character of the contract is whether the buyer or consignee is obligated at all events to pay the purchase price of the subject matter of the contract, and that if he is so obligated, the contract is one of conditional sale and not a consignment contract. Accordingly, the court held that the instruments in question constituted a conditional sales contract.

60 O.S.A. § 318 provides that a conditional sales contract " * * * shall be void as against innocent purchasers, or the creditors of the vendee, unless the original instrument, or a true copy thereof, shall have been deposited in the office of the register of deeds in and for the county wherein the property shall be kept; * * *".

It is true that in the instant case the title of the holder of the trust receipt, the Acceptance Corporation, was derived from a third party, Modern, and not from the debtor, Shafer, and that such fact is regarded as controlling in some decisions in determining whether the instrument constitutes a trust receipt.[5]

5. See In re Otto-Johnson Mercantile Co., D.C.N.M., 52 F.2d 678, 679, 680 and cases cited in Note 3.

However, the Supreme Court of Oklahoma, in the Ahrens case, apparently did not regard the fact that the transactions were directly between the Refrigerator Company and Brinson to be significant, and held that the controlling test was whether Brinson, the buyer, was obligated in all events to pay the purchase price of the subject matter of the contract.

■ Accordingly, we conclude that under the law of Oklahoma, the instrument involved here constituted a conditional sales contract and was void as against the trustee in bankruptcy.

■ The findings of the referee, confirmed by the trial court, that the Acceptance Corporation failed to trace the funds involved in Claim 3 into the hands of the trustee is supported by the evidence and is not clearly erroneous.

The order is affirmed.