The UNITED STATES of America for the Use of BACHMAN & KEFFER CONSTRUCTION COMPANY, a partnership composed of Earl Bachman and C. E. Keffer, and the United States Fidelity and Guaranty Company, Appellants,

v.

H. G. COZAD CONSTRUCTION COMPANY, Inc., a corporation, and Maryland Casualty Company, a corporation, Appellees.

No. 7247.

United States Court of Appeals
Tenth Circuit.

Nov. 15, 1963.

Elliott C. Fenton, Edgar Fenton, Oklahoma City, Okl., for appellants.

Clyde J. Watts, Oklahoma City, Okl. (John B. Hayes and Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., of counsel), for appellees.

Before LEWIS, HILL and SETH, Circuit Judges.

LEWIS, Circuit Judge.

The United States brought this suit under 40 U.S.C.A. §§ 270a, 270b, 270c and 270d for the use and benefit of Bachman and Keffer Construction Company (B and K) and its surety against H. G. Cozad Construction Company, Inc. (Cozad) and its surety to recover unpaid balances due B and K from Cozad under a labor and material contract. Judgment was entered by the trial court, upon recommendation of a special master, for B and K upon the allegations of the complaint for $20,586.52 and for Cozad upon the allegations of a counterclaim for $29,-616.46. The correctness of the judgment awarded Cozad upon counterclaim is the basis for appeal.

In December, 1956, Cozad entered into a written construction contract with the Army Engineers to repair and reconstruct certain parts of the Oklahoma City floodway of the North Canadian River.

This prime contract designated the pay items as follows:

| Item No. | Description |
|---|---|
| 1. | Clearing |
| 2. | Excavation, unclassified |
| 3. | Excavation, riprap toe |
| 4. | Semi-compacted fill |
| 5. | Dumped riprap |
| 6. | Sand and gravel backing |
| 7. | Sand backing |
| 8. | Gravel backing |
| 9. | Mulching |
| 10. | Twelve-inch diameter C. M. pipe culvert |

Cozad began work on the project and accomplished considerable of the necessary clearing and excavation of the banks of the river in preparation for the laying of riprap when floods and washes rendered the progress unacceptable to the Corps of Engineers. About October 1, 1957, Cozad discussed the possibility of a subcontract with B and K. As a result of the discussion and after a visual inspection of the work area was made, an agreement was made and B and K began work on October 9. A written contract was executed October 16 and the instant controversy is whether this contract requires B and K to complete all work under the prime contract or limits B and K's obligation to a designated portion of the unfinished work of the prime contract. The parties agree that the following provisions of the subcontract are pertinent to a determination of the intent of the contractors:

"And Whereas, it is the intention and desire of both parties hereto that the Bachman & Keffer Const. Co. shall perform as a sub-contractor *a part of the work required by said above described contract* to be performed by the H. G. Cozad Construction Company.

Now, therefore, it is agreed by and between the parties hereto as follows:—

1. That, all work herein required to be accomplished by the Bachman & Keffer Const. Co. shall be done, performed and accomplished in strict accordance with the plans and specifications for the prime contract hereinabove described, and said plans and specifications are by this reference thereto specifically made a part of this contract with the same force and effect as though the same were set forth herein.

That, Bachman & Keffer Const. Co. has carefully examined and is fully familiar with the content and requirements in said plans and specifications set forth.

2. That, the Bachman & Keffer Const. Co. *shall perform all of the items in entirety as set forth in the contract hereinbefore designated, and under the bid items designated by their respective numbers, as follows:*

| Item No. | Description | Quan. | Unit | Unit Price | Est. Amt. |
|---|---|---|---|---|---|
| 3. | Excavation, riprap toe | 38,000 | Cu. Yd. | .25 | 9,500.00 |
| 5. | Dumped riprap | 18,000 | Cu. Yd. | 5.75 | 108,100.00 |
| 6. | Sand & gravel backing | 6,300 | Cu. Yd. | 5.00 | 31,500.00 |
| 7. | Sand backing | 3,600 | Cu. Yd. | 5.00 | 18,000.00 |
| 8. | Gravel backing | 3,600 | Cu. Yd. | 5.25 | 18,900.00 |
| 9. | Mulching | 16 | Acres | 150.00 | 2,400.00 |
| | | | TOTAL | | 188,400.00 |

3. That, the Bachman & Keffer Const. Co. shall furnish all labor, materials, equipment and knowhow to perform, accomplish and com-

plete items numbered Three (3), Five (5), Six (6), Seven (7), Eight (8), and Nine (9) according to the plans and specifications at no expense to the H. G. Cozad Construction Company other than the regularly scheduled payment at rates set forth in Paragraph Two (2) above." (Emphasis added.)

The disputed work consisted of clearing and excavation, construction admittedly falling within the classification of items 1 and 2 of the prime contract. Appellants contend that the subcontract unambiguously calls for the performance of only items 3, 5, 6, 7, 8 and 9. Appellee, on the other hand, contends, and the special master found, that the subcontract was entered with the intention that Bachman & Keffer should assume responsibility for the completion of the prime contract, and that the itemizations from the specifications merely provided the consideration due upon the completion of the contract.

■■ The rules applicable to the interpretation of written contracts under Oklahoma law are set by statute, 15 O.S. § 151 et seq., which formalize the familiar generality that the mutual intention of the contracting parties shall be determined by a consideration of the language of the whole contract. Particular clauses of a contract, though persuasive in isolation, are not deemed controlling when violative of the general intent of the parties expressed in the contract as a whole. 15 O.S. § 166; Hendersen v. Ponca City Milling Co., 116 Okl. 169, 243 P. 743. Applying these basic rules to the subject subcontract we are of the opinion that the clear intention of the parties is not reflected in the wording of the contract. Paragraph 2 of the subcontract contains a redundancy, an incomplete sentence, or a complete contradiction of expression. Although in such case reference can then be made to contract recitals to aid in interpreting an operative clause, Thomas v. Dancer, et al., Okl., 264 P.2d 714, no comfort is gained by so doing. The recital that B and K shall perform "part of the work required by said above

described (prime) contract * * *" is again ambiguous. "Part of the work" may refer to either the original obligation of the prime contract or to that portion of the work left uncompleted.

We think it necessary, as did the trial examiner, to consider extrinsic evidence to ascertain the intention of the parties. The reliability of such reference has been approved by the Supreme Court of Oklahoma in Strange v. Hicks, 78 Okl. 1, 188 P. 347:

"It is to be assumed that parties to a contract know best what was meant by its terms, and are the least liable to be mistaken as to its intention, that each party is alert to protect his own interest and to insist on his rights, and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and intended it should be. Parties are far less liable to have been mistaken as to the meaning of their contract during the period while harmonious and practical construction reflects their intention than they are when subsequent differences have compelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it of what was intended by its provisions."

■ So viewed, the judgment below is manifestly supported by substantial evidence leading to the conclusion that the parties intended that B and K should do the disputed work of clearing and excavating. B and K began this work on October 9 and continued with the work after the subcontract was reduced to writing on October 16. It was only after the terms of the contract were thoroughly studied that B and K denied its obligation to perform the disputed work.

■ Appellant B and K also urges error below by contending that by allowing recovery to Cozad the latter will receive payment for the same work from both B and K and the Army Engineers

and that the amount of the judgment, $29,616.46, is in excess of the prayer of the counterclaim. Neither contention has merit, the first being but a play on words and the latter being controlled by Rule 15(b), F.R.Civ.P.

The judgment is affirmed.